# 16-1264-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

⮞⮞ ⮜⮜

CHRISTOPHER MCCROBIE,

*Plaintiff-Appellant,*

*v.*

PALISADES ACQUISITION XVI, LLC, HOUSLANGER & ASSOCIATES, PLLC,
TODD E. HOUSLANGER,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court
for the Western District of New York (Buffalo)*

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

Brian L. Bromberg
BROMBERG LAW OFFICE, P.C.
26 Broadway, 21st Floor
New York, New York 10004
212-248-7906

*and*

Kenneth R. Hiller
LAW OFFICES OF
  KENNETH HILLER, PLLC
6000 North Bailey Avenue, Suite 1A
Amherst, New York 14226
716-564-3288

*Attorneys for Plaintiff-Appellant*

# Disclosure Statement

*Appellate Court Number 16-1264-cv*

**Short Caption:** *McCrobie v. Palisades Acquisition XVI, LLC*

(1)  The full name of every party, any parent corporation, and any publicly held company that owns 10% or more of the party's stock that the attorney represents in the case:

**Christopher McCrobie**

(2)  If such a party or amicus is a corporation:

**N/A**

(3)  The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in court:

**Bromberg Law Office, P.C.**
**Law Offices of Kenneth Hiller, PLLC**

Dated:    June 14, 2016

Respectfully submitted,

By: /s/ Jonathan R. Miller
Jonathan R. Miller,
One of Appellant's Attorneys

Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, New York 10004
(212) 248-7906

# Table of Contents

Table of Authorities ................................................................. iii

Introduction ........................................................................... 1

Jurisdictional Statement............................................................ 2

Statement of the Issues Presented for Review............................. 3

Statement of the Case and Statement of Facts.......................... 6

The Claims in this Case and the Procedural History Below ................ 10

Standard of Review .................................................................. 13

Summary of Argument.............................................................. 14

Argument ............................................................................... 17

   I.   The *Rooker-Feldman* Doctrine bars neither the claims in the FAC, nor the claims in the proposed SAC, because none of Plaintiff's allegations in any way challenge the validity of the state-court judgment against Plaintiff. ................................................ 17

   II.   Defendants violated numerous sections of the FDCPA by threatening to execute and attempting to execute upon thousands of New York State court judgments without any legal right to do so.....28

     A.  Defendants had no right to collect upon the state-court judgment, because they never actually purchased the judgment or the right to collect upon it from Centurion. ...................................... 30

     B.  Defendants had no right to collect upon the state court judgment, because Plaintiff never received notice of the assignment as required by state court precedent. ................................................ 36

     C.  Defendants had no right to collect upon the state court judgment, because they never publicly filed a copy of the assignment instrument as required by CPLR 5019(c). ........................................ 47

   III.   Houslanger violated § 1692e(3) of the FDCPA by signing and issuing income executions upon New York State court judgments, without reliable knowledge that their client was in fact the judgment

i

creditor, and without conducting even a cursory investigation to verify that their client had the legal right to execute upon the judgments. . 52

IV.     Plaintiff's FDCPA claims are not time-barred............................58

V.   None of the other threshold issues raised by Defendants have merit.....................................................................................................59

   A.   There is no basis for federal courts to exercise *Colorado River* abstention. ..........................................................................................59

   B.   Todd Houslanger, a debt collector, is liable for his violations of the FDCPA.......................................................................................61

   C.   Asta, a debt collector, is vicariously liable for the acts of Palisades. ..........................................................................................62

Conclusion..............................................................................................67

Certificate of Compliance ....................................................................69

# Table of Authorities

**Page(s)**

## Cases

*Asch v. Teller Levit & Silvertrust, P.C.*,
  No. 00 C 3290, 2003 WL 22232801 (N.D. Ill. Sept. 26,
  2003) ................................................................................ 46

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ...................... 13

*Avila v. Rubin*,
  84 F.3d 222 (7th Cir. 1996) ................................................ 54

*Bearing Co. of Am., Inc. v. Am. Software, Inc.*,
  570 F.Supp.2d 376 (D. Conn. 2008) ......................................... 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................ 14, 62

*Centurion Capital Corp. v. Guarino*,
  35 Misc. 3d 1219(A), 2012 WL 1543286 (N.Y. Civ. Ct.
  2012) ................................................................................ 39

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir.2002) ................................................. 13

*Chase Bank USA v. Cardello*,
  27 Misc. 3d 791 (N.Y. Civ. Ct. 2010) ......................... *passim*

*Cleveland v. Caplaw Enterprises*,
  448 F.3d 518 (2d Cir.2006) ................................................. 13

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ........................................... 17, 59, 60, 61

*Cruz v. Int'l Collection Corp.*,
  673 F.3d 991 (9th Cir. 2012) .............................................. 45

*Currier v. First Resolution Inv. Corp.*,
  762 F.3d 529 (6th Cir. 2014) .......................................... 46, 47

*Erickson v. Johnson*,
  No. Civ.05-427(MJD/SRN), 2006 WL 453201 .................................... 45

*Exxon Mobil Corp. v. Saudi Basic Indus.*,
  544 U.S. 280 (2005) ........................................... 17, 18, 22, 27

*Fausset v. Mortgage First, LLC*,
  2010 WL 987169 (N.D. Ind. Mar. 12, 2010) ....................................... 46

*In re: FDCPA Cognate Cases*,
  No. 1:13-cv-01340-RJJ, 2016 WL 1273349 (W.D. Mich.
  Mar. 28, 2016) ............................................................... 24, 27

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d. Cir. 1995) ......................................... 63, 64

*Gallego v. Northland Grp. Inc.*,
  814 F.3d 123 (2d. Cir. 2016) ......................................... 43, 44

*Greco v. Trauner, Cohen & Thomas, L.L.P.*,
  412 F.3d 360 (2d Cir 2005) ........................................... 53, 54

*Hageman v. Barton*,
  817 F.3d 611 (8th Cir. 2016)................................................. 22

*Harris v. Steel*,
  773 F.3d 884 (7th Cir. 2014)................................... 25, 26, 27

*Illiano v. Mineola Union Free Sch. Dist.*,
  585 F.Supp.2d 341 (E.D.N.Y.2008) .................................... 12

*Iqbal v. Hasty*,
  490 F.3d 143 (2d Cir.2007) ............................................... 13

*King v. Legal Recovery Law Offices, Inc.*,
  No. CV 13-05347-KAW, 2014 WL 938559 (N.D. Cal. Mar.
  6, 2014) .................................................................... 24

*Kohl v. Fusco*,
  164 Misc. 2d 431 (N.Y. Civ. Ct. 1994) ........................... 49, 52

*Kropelnicki v. Siegel,*
    290 F.3d 118 (2d Cir. 2002) ......................................................... 22, 23

*Law Research Serv., Inc. v. Martin Lutz Appellate Printers,*
    *Inc.,*
    498 F.2d 836 (2d Cir. 1974) ................................................................ 51

*Miller v. Wolpoff & Abramson, L.L.P.,*
    321 F.3d 292 (2d Cir. 2003) ................................................................ 53

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ........................................................................ 60, 61

*Moukengeschaie v. Eltman, Eltman & Cooper, P.C.,*
    No. 14-CV-7539 (MKB), 2016 WL 1274541 (E.D.N.Y. Mar.
    31, 2016) ............................................................................. 41, 49, 51

*Mueller v. Barton,*
    No. 4:13-CV-2523 CAS, 2014 WL 4546061 (E.D. Mo. Sept.
    12, 2014) ................................................................................... 24

*Musah v. Houslanger & Associates, PLLC,*
    962 F. Supp. 2d 636 (S.D.N.Y. 2013) .................................................... 41

*Musah v. Houslanger & Assocs., PLLC,*
    2012 WL 5835293 (S.D.N.Y. Nov. 16, 2012) ................................... 49, 51

*Nance v. Ulferts,*
    282 F. Supp. 2d 912 (N.D. Ind. 2003) ................................................. 45

*Nechis v. Oxford Health Plans, Inc.,*
    421 F.3d 96 (2d Cir.2005) .................................................................. 13

*In re Pinpoint Technologies, LLC,*
    45 Misc. 3d 1223(A), 2014 WL 6780640 (N.Y. Civ. Ct.
    2014) ............................................................................. 7, 39, 48, 52

*Resler v. Messerli & Kramer, P.A.,*
    No. Civ. 02-2510, 2003 WL 19349 (D. Minn. Jan. 23, 2003).............. 23

*Samuels v. Air Transport Local 504*,
    992 F.2d 12 (2d Cir. 1993) .................................................. 64

*Seeger v. AFNI, Inc.*,
    548 F.3d 1107 (7th Cir. 2008) ............................................. 45

*Skinner v. Switzer*,
    562 U.S. 521 (2011) ............................................................ 21

*Somin v. Total Cmty. Mgmt. Corp.*,
    494 F. Supp. 2d 153 (E.D.N.Y. 2007) ................................. 59

*Todd v. Weltman, Weinberg & Reis Co.*,
    434 F.3d 432 (6th Cir. 2006) ............................................... 23

*Tri City Roofers, Inc. v. Northeastern Indus. Park*,
    461 N.E.2d 298 (N.Y. 1984) ............................................... 49

*Tuttle v. Equifax Check*,
    190 F.3d 9 (2d Cir. 1999) .................................................... 45

*Whitehead v. Discover Bank*,
    118 F. Supp. 3d 1111 (E.D. Wis. 2015) .............................. 24

## Statutes

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*.......... *passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(6) ................................................... *passim*

Fed. R. Civ. P. 45 .................................................................. 55

N.Y. C.P.L.R. 5230(b) ......................................................... 55

N.Y. C.P.L.R. 5019(c)....................................................... *passim*

N.Y. Uniform City Court Act § 1501......................................... 55

vi

## Introduction

Plaintiff Christopher McCrobie ("Plaintiff" or "McCrobie") was the victim of a core violation of the federal Fair Debt Collection Practices Act ("FDCPA").[1] To put it as succinctly as possible: McCrobie in fact owed a debt to Company A – but Company B falsely represented that the debt was owed to *it* instead.

Unfortunately, the district court never reached the merits of Plaintiff's claims. Instead, it dismissed Plaintiff's First Amended Complaint ("FAC"), and denied Plaintiff's motion to file his proposed Second Amended Complaint ("SAC"), for lack of subject-matter jurisdiction, in a Decision and Order that badly misconstrued the *Rooker-Feldman* Doctrine. But as explained below, this federal FDCPA case in no way seeks to invalidate or appeal a state-court judgment. Thus, Plaintiff respectfully submits that the district court erred by dismissing this case for lack of subject-matter jurisdiction.

For these reasons and the reasons explained below, McCrobie respectfully requests this Court to reverse the district court's denial of Plaintiff's First Motion to Amend Plaintiff's Complaint, as well as the

---

[1] 15 U.S.C. § 1692 *et seq.*

1

district court's grant of Defendants' Motion to Dismiss. Moreover, even though the district court never reached the merits of Plaintiff's allegations, McCrobie respectfully asks this Court to hold that he states numerous viable claims under the FDCPA, and to remand for further proceedings.

## Jurisdictional Statement

The United States District Court for the Western District of New York had federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

This Court has appellate jurisdiction under 28 U.S.C. § 1291, because the appeal is from a Decision and Order, filed on March 25, 2016,[2] which resulted in a final judgment, entered on March 28, 2016, that disposed of all the claims with respect to all parties.[3] Plaintiff-Appellant Christopher McCrobie timely filed his Notice of Appeal on April 22, 2016.[4]

---

[2] Order of the Honorable John T. Curtin. A. 701-15. (Citations to the Appendix appear as "A. ___")
[3] Judgment of the United States District Court, Western District of New York, entered March 28, 2016, Appealed From. A. 716.
[4] Notice of Appeal, dated April 22, 2016. A. 717.

## Statement of the Issues Presented for Review

1.     Does the *Rooker-Feldman* Doctrine bar a consumer plaintiff from asserting Fair Debt Collection Practices Act claims for abusive, deceptive, and/or unfair attempts to *collect upon* state-court judgments, where the consumer plaintiff's allegations in no way challenge the validity of the state-court judgment itself?

The district court answered YES, holding that Plaintiff's FDCPA claims were "inextricably intertwined" with the state-court determination; that *Rooker-Feldman* applied; and that the court lacked subject-matter jurisdiction.

2.     Did Defendants violate numerous sections of the Fair Debt Collection Practices Act by threatening to execute and, in fact, executing upon a state-court judgment that another, unrelated company obtained, where (a) Defendants never actually purchased the state-court judgment; (b) Plaintiff never received notice from the original judgment creditor that the state-court judgment had been assigned to Defendants; and (c) Defendants never took the steps required by the N.Y. C.P.L.R. to effectuate the assignment of the state-court judgment?

3

Because the district court dismissed the case for lack of subject-matter jurisdiction, the court never considered this issue. Appellant appeals to this Court for a decision holding that Plaintiff has pled FDCPA claims upon which relief can be granted.

3.    Did Defendants Houslanger & Associates, PLLC and Todd Houslanger violate § 1692e(3) of the Fair Debt Collection Practices Act when they issued income executions upon a state-court judgment – without firsthand knowledge that their client was in fact the judgment creditor, and without taking even a minimal step to verify that their client had the legal right to garnish Plaintiff's wages?

Because the district court dismissed the case for lack of subject-matter jurisdiction, the court never considered this issue. Appellant appeals to this Court for a decision holding that Plaintiff has pled FDCPA claims upon which relief can be granted.

4.    Does the Fair Debt Collection Practices Act's one-year statute of limitations bar Plaintiff's claims, where all of his claims arise from an "Income Execution" dated August 28, 2014, and Plaintiff filed this FDCPA action less than five months later on January 6, 2015?

4

The district court answered NO, holding that Plaintiff's claims accrued no earlier than the date of the "Income Execution."

5.     Do any of the other arguments raised by Defendants in the briefing below – that the district court should abstain to avoid duplicating state-court litigation; that Todd Houslanger cannot be held individually liable for the alleged violations; and that Asta Funding, Inc. cannot be held vicariously liable for the alleged violations – hold any merit?

Because the district court dismissed the case for lack of subject-matter jurisdiction, the court never considered these issues. Appellant appeals to this Court for a decision holding that these arguments are meritless.

5

## Statement of the Case and Statement of Facts

In 2006, a company called Centurion Capital Corporation ("Centurion") sued Plaintiff-Appellant Christopher McCrobie ("Plaintiff" or "McCrobie") in the Buffalo City Court,[5] in an effort to collect upon an old credit-card debt originated by Providian Financial Co. that Centurion allegedly bought.[6] McCrobie had no knowledge of the lawsuit or the default judgment, since Centurion attempted to serve McCrobie by mailing the pleadings to an old address where he no longer lived.[7] In 2007, Centurion applied for and obtained a default judgment against McCrobie.[8] The state-court judgment appears to have lain dormant for the next seven years.[9]

In August 2014, without any previous warning, McCrobie received a copy of the "Income Execution" attached as Exhibit F to McCrobie's proposed SAC.[10] The "Income Execution" looks like an official court document and bore the caption, *Centurion Capital Corporation*

---

[5] Second Amended Complaint and Demand for Jury Trial, dated August 27, 2015, with Exhibits ("SAC"),at ¶ 17. A. 187.

[6] *Id.* at ¶ 16. A. 187.

[7] *Id.* at ¶¶ 18, 19, 21. A. 187.

[8] *Id.* at ¶ 20. A. 187.

[9] *Id.* at ¶¶ 20-22.

[10] *Id.* at ¶ 38, 40. A. 190.

6

*Assignee of Providian Financial Co. v. Christopher McCrobie.*[11] The "Income Execution" asserted that a judgment had been entered in that case, and that McCrobie owed $982.12 plus post-judgment interest from March 9, 2007.[12] It also stated that "The current creditor, as the assignee to whom this debt is owed, is Palisades Acquisition XVI, LLC."[13] The name and address of McCrobie's current employer appeared on the "Income Execution" in bold print in the middle of the first page.[14] And the "Income Execution" contained the following paragraph:

> **Directions to Judgment Creditor:** You are notified and commanded immediately to start paying to the Enforcement officer serving a copy of this Income Execution to you: installments amounting to 10% (but no more than the Federal limits set forth in I. Limitations on the amount that can be withheld, set forth below) of any and all salary, wages or other income, including any and all overtime earning, commissions or other irregular compensation received or hereafter to be received from your Employer and to continue paying such installments until the judgment with interest and the fees and expenses of this Income Execution are fully paid and satisfied, and if you fail to do so within 20 days this Income Execution will be

---

[11] *Id.* at Exhibit E. A. 225.

[12] *Id.*

[13] *Id.*

[14] *Id.*

7

served upon the Employer by the Enforcement
Officer.[15]

The "Income Execution" was signed by an attorney who worked for
Houslanger & Associates, PPL ("the Houslanger Firm"), and it was
dated August 28, 2014.[16]

The "Income Execution" conveyed information regarding a debt
that was allegedly owed to Defendant Palisades Acquisition XVI, LLC
("Palisades"); it was therefore a "communication" as defined by §
1692a(2) of the FDCPA.[17]

But, contrary to the "Income Execution's" assertion, Palisades was
*not* the current judgment creditor. Palisades never purchased the state-
court judgment from Centurion, as evidenced by the fact that Palisades
attorney was unable to produce any documentation of such a purchase –
not even a single piece of paper.[18] When asked for documentation of
Palisades alleged purchase, the only thing that Palisades' attorney
could produce was a pair of three-paragraph "Bills of Sale," showing
that Palisades had purchased several unspecified "accounts" from a

---

[15] *Id.*
[16] *Id.*
[17] *Id.* at ¶ 41. A. 191.
[18] *Id.* at ¶ 51, 61-65. A. 192, 194-95.

8

company called Great Seneca Financial Corporation, which was dated two days before the state-court judgment had even been entered.[19] The "Bill of Sale" made no mention of Centurion, and no mention of McCrobie or the judgment entered against him in Buffalo City Court.[20]

Even if Palisades had purchased the state-court judgment from Centurion, however, it would have lacked the legal right to send the "Income Execution." This is because Centurion, the original judgment creditor, never notified McCrobie that it was assigning the judgment, as required by New York State law.[21] Moreover, Palisades never docketed a copy of the instrument on which the assignment was based;[22] under New York State law, the assignment was ineffective until that was docketed.[23]

After he received the "Income Execution," McCrobie appeared before the Buffalo City Court and moved to vacate the default judgment that had been obtained by Centurion in 2007; on February 2, 2016, that

---

[19] *Id.* at Exhibit B. A. 38-41.

[20] *Id.*

[21] *Id.* at ¶¶ 54-56. A. 192-93.

[22] *Id.* at ¶ 53. A. 192.

[23] *Id.* at ¶¶ 51-52. A. 192.

9

court vacated the default judgment and dismissed the state-court debt collection action.[24]

### The Claims in this Case and the Procedural History Below

Based, on the facts above, it is clear that Palisades was not legally entitled to execute upon the state-court judgment obtained by Centurion. Moreover, it is clear that the Houslanger firm took absolutely no steps whatsoever to verify that Palisades was the true judgment creditor before signing its name to the "Income Execution" – after all, any attorney who tried to verify that fact would have at least checked the Buffalo City Court docket *or* asked his client for documentation showing that it had purchased the judgment. The facts above demonstrate that the Houslanger Firm did neither. Nevertheless, the Houslanger Firm, on behalf of Palisades, signed the "Income Execution" and delivered it not only to McCrobie, but to the Buffalo City Marshall and to McCrobie's employer. As a result, Defendants obtained $572.45 from McCrobie's paychecks, even though they were not the true judgment creditors. Defendants' activities violated numerous sections of the FDCPA: §§ 1692e, 1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), 1692f,

---

[24] Notice of Motion by Plaintiff for Leave to Cite Additional Authority, dated February 22, 2016, with exhibit. A. 684-87.

1692f(1), and 1692c(b).[25] Moreover, the Houslanger Firm violated §

1692e(3) by signing its name to the "Income Execution" without taking

even a minimal step to verify that its client was the judgment creditor.[26]

Plaintiff filed this FDCPA action in the United States District

Court for the Western District of New York on January 6, 2015.[27] He

filed his First Amended Complaint ("FAC") as of right on May 12,

2015.[28] The FAC is the operative pleading. On July 28, 2015,

Defendants moved to dismiss the FAC in its entirety.[29]

On August 27, 2016, Plaintiff moved to file his proposed SAC.[30]

Among other additions, the proposed SAC added as named defendants

Asta Funding, Inc. ("Asta"), the parent corporation of Palisades, and

Todd Houslanger, the principal of the Houslanger Firm.[31]

The district court deemed Plaintiff's Motion to Amend His

Complaint to also serve as an opposition to Defendants' Motion to

---

[25] SAC, ¶¶ 77-86 A. 206-12.

[26] *Id.*

[27] Complaint and Demand for Jury Trial dated January 6, 2014. A. 7-10.

[28] Complaint and Demand for Jury Trial dated May 12, 2015, with exhibits. A. 17-55.

[29] Defendants' Notice of Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction, dated July 28, 2015. A. 56-57.

[30] Notice of Motion by Plaintiff to Amend the Complaint, dated August 27, 2015. A. 144-45.

[31] SAC, A. 181-388.

Dismiss, and advised Plaintiff that no separate opposition to Defendants' Motion was necessary.[32] Defendants opposed Plaintiff's Motion to Amend solely on the grounds that the proposed SAC would be futile.[33]

The district court granted Defendants' Motion to Dismiss and denied Plaintiff's Motion to Amend His Complaint.[34] The district court's Decision and Order dated March 25, 2016 addressed only two of the issues raised in the parties' briefing. First, it held that Plaintiff's claims were *not* barred by the FDCPA's one-year statute of limitations. Second, it held that Plaintiff's claims *were* barred by the *Rooker-Feldman*

---

[32] Affirmation of Kenneth R. Hiller, for Plaintiff, in Support of Motion for Status Conference, dated September 30, 2015, at ¶¶ 7-8. A. 663-64. *See generally* Order of the Honorable John T. Curtin, dated March 24, 2016. A. 701-15. *See Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F.Supp.2d 376, 384 (D. Conn. 2008) (*quoting In re Colonial Ltd. P'ship Litig.*, 854 F.Supp. 64, 79-80 (D. Conn. 1994) ("Where the proposed amendment requires leave of court, the preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave."); *Illiano v. Mineola Union Free Sch. Dist.*, 585 F.Supp.2d 341, 349 (E.D.N.Y.2008) ("When a plaintiff amends its complaint while a motion to dismiss is pending the court may deny the motion as moot or consider the merits of the motion in light of the amended complaint.").

[33] Memorandum of Law by Defendants in Opposition to Plaintiff's Motion to Amend, dated September 25, 2015. A. 389-419.

[34] Order of the Honorable John T. Curtin, dated March 24, 2016. A. 701-15.

doctrine. Concluding that it lacked subject-matter jurisdiction, the district court ordered the case dismissed. A final judgment issued on March 28, 2016.[35]

On April 22, 2016, McCrobie filed a Notice of Appeal from the district court's order dismissing the case and the resulting judgment.[36]

## Standard of Review

The standard of review for an appeals court from a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) is *de novo*.[37] In reviewing a motion to dismiss under Rule 12(b)(6), courts must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.[38] The plaintiff must satisfy a "flexible 'plausibility standard.' "[39] "[O]nce a claim has been stated adequately, it may be supported by showing any

---

[35] Judgment of the United States District Court, Western District of New York, entered March 28, 2016, Appealed From. A. 716.

[36] Notice of Appeal, dated April 22, 2016. A. 717.

[37] *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002).

[38] *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.2005).

[39] *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir.2007), rev'd on other grounds sub nom. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

set of facts consistent with the allegations in the complaint."[40] Courts, therefore, do not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."[41]

## Summary of Argument

The district court's Decision and Order dismissing McCrobie's claims for lack of subject-matter jurisdiction badly distorts the *Rooker-Feldman* Doctrine – a rule that the United States Supreme Court has repeatedly emphasized is "narrow." *Rooker-Feldman* is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments. As explained below, however, McCrobie's federal FDCPA does not complain of injuries caused by the state-court judgment – nor does it invite review of a state-court judgment. Rather, McCrobie's injuries were caused by Defendants' unauthorized, deceptive, and unfair attempts to *collect upon* the state-court judgment. McCrobie's FDCPA claims thus

---

[40] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
[41] *Id.* at 570.

14

have no bearing on the validity of the state-court judgment itself –
which, in any case, has already been vacated by the Buffalo City Court.

Because the *Rooker-Feldman* doctrine was the sole basis for the
district court's grant of dismissal, it did not reach the question of
whether Plaintiff had viably pleaded violations of the FDCPA. Plaintiff
respectfully asks this Court for a decision holding that Plaintiff has
stated claims upon which relief may be granted.

Plaintiff's claims fall into two main categories. First, Defendants
violated several sections of the FDCPA – §§ 1692e, 1692e(2)(A),
1692e(4), 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692c(b) – by
delivering the "Income Execution" to McCrobie, the Buffalo City
Marshal, and McCrobie's employer, and by ultimately taking $572.45
out of McCrobie's paychecks. While nothing in the FDCPA prevents a
judgment creditor from exercising post-judgment remedies such as
wage garnishment, *Defendant Palisades was not the judgment creditor*.
Defendant Palisades was not legally entitled to enforce the state-court
judgment that Centurion had obtained against McCrobie for three
reasons. First, Palisades never purchased the judgment from Centurion.
Second, Centurion never notified McCrobie of any assignment, as

15

required by New York State law. Third, Palisades never docketed a copy of the assignment instrument, as required by New York State law. Lacking any legal authority to execute upon Centurion's state-court judgment, Defendants' "Income Execution" violated the sections of the FDCPA listed above.

Second, the Houslanger Firm and Houslanger (collectively, "Houslanger Defendants") violated § 1692e(3) by signing their names to the "Income Execution." Under this Court's precedents, attorneys that sign their names to communications attempting to collect a debt represent that they have meaningfully reviewed the circumstances related to the content of the communication. In the context of this "Income Execution," because the Houslanger Defendants had no previous first-hand knowledge that their client was the judgment creditor, a meaningful review would have entailed at least some minimal step to verify that their client was the judgment creditor. This could have included checking the Buffalo City Court docket to verify that their client was the judgment creditor, or asking their client for documentation of their alleged purchase of the state-court judgment. The Houslanger Defendants did neither, completely abdicating their

16

responsibility under § 1692e(3) to conduct a meaningful review before signing their names to the "Income Execution."

This Brief also includes arguments concerning a number of other issues – the FDCPA's statute of limitations, the *Colorado River* abstention doctrine, and whether the proposed SAC adequately pleads allegations against Asta and Houslanger – should this Court determine that it is necessary to reach these issues.

## Argument

I. **The *Rooker-Feldman* Doctrine bars neither the claims in the FAC, nor the claims in the proposed SAC, because none of Plaintiff's allegations in any way challenge the validity of the state-court judgment against Plaintiff.**

The *Rooker-Feldman* Doctrine is a "narrow" rule,[42] which is rooted neither in the Constitution nor in prudential concerns, but in a statute that provides that the only federal court with appellate jurisdiction to reverse or modify a state-court judgment is the Supreme Court of the United States.[43] The Doctrine "is confined to cases of the kind from

---

[42] *See Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005).

[43] *See* 28 U.S.C. § 1257. *See also Exxon Mobil*, 544 U.S. at 283; *Id.* at 292 n.8 ("Congress, if so minded, may explicitly empower district courts to oversee certain state-court judgments and has done so, most notably, in authorizing federal habeas review of state prisoners' petitions.").

17

which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments."[44] The Supreme Court has emphasized that the *Rooker-Feldman* Doctrine deprives "district court[s] from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority" only in "limited circumstances . . . ."[45]

Contrary to Defendant's arguments and the Decision and Order of the court below, McCrobie's case does not present those "limited circumstances." Plaintiff admits that Centurion obtained a default state-court judgment against him in 2007, before he filed this federal action, thus fulfilling two of the four *Rooker-Feldman* criteria articulated by the Supreme Court. But missing are the two most important elements: that the injuries alleged by Plaintiff were *caused* by the state-court judgment, and that the Plaintiff *invites review* of the state-court judgment.

---

[44] *Id.* at 284.

[45] *Id.* at 291.

18

Here, Plaintiff does not seek review in federal district court of the 2007 Buffalo City Court judgment obtained by Centurion; to the contrary, he sued Defendants for violating the FDCPA by making false statements *about* that judgment. Specifically, Plaintiff alleges that Defendants violated the FDCPA by claiming, in 2014, that they were legally entitled to collect upon the Buffalo City Court judgment, when in fact they were not. The question of whether the Buffalo City Court's decision to enter judgment back in 2007 was correct is irrelevant to these FDCPA claims.

Moreover, the injuries alleged in the FAC and proposed SAC are neither caused by, nor "inextricably intertwined with,"[46] the Buffalo City Court's decision to enter judgment. Plaintiff has not complained to the district court that the Buffalo City Court made a mistake; rather, Plaintiff has complained that *Defendants* made a mistake when they made false assertions about the state-court judgment. In other words, Defendants' assertions that they had obtained the Buffalo City Court judgment were misleading, regardless of whether the judgment was correctly entered. And a verdict against Defendants in the federal

---

[46] Order of the Honorable John T. Curtin, dated March 24, 2016. A. 712.

19

FDCPA case would not have tampered with the state-court judgment in the slightest – for a verdict in the federal FDCPA case, holding that Defendants lied about their legal authority to collect on the state-court judgment, would nevertheless have left the state-court judgment in place, completely enforceable by anyone who in fact had legal authority to enforce it.

Indeed, far from asking the federal district court to review the state-court judgment, McCrobie asked the Buffalo City Court for an Order to Show Cause why its own judgment should not be vacated. And, eventually, the Buffalo City Court *did* vacate that state-court judgment. But the Buffalo City Court's decision to vacate its judgment did not moot McCrobie's FDCPA claims, any more than a verdict on McCrobie's FDCPA claims would have vacated the Buffalo City Court's judgment. In short, whether the Buffalo City Court correctly entered judgment in favor of Centurion, and whether a late-coming stranger has the legal right to collect upon the judgment, are two distinct questions; the *Rooker-Feldman* Doctrine would apply only to the former, while McCrobie's allegations deal only with the latter.

20

"If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or related question was earlier aired between the parties in state court."[47] Thus, it is a mistake to reflexively pull the *Rooker-Feldman* lever merely because the facts involve a previous state-court case. In *Skinner v. Switzer*, a prisoner convicted of murder in state court turned around and filed a civil rights lawsuit under 42 U.S.C. § 1983 against the district attorney, alleging that the district attorney had violated the prisoner's right to due process by withholding DNA evidence under a state statute.[48] Despite the connection between the DNA evidence and the question of whether the state-court guilty verdict was correct, the Supreme Court held that *Rooker-Feldman* did not apply.[49]  In other words, the legal issue of whether the prisoner's civil rights had been violated was distinct from the legal issue of the prisoner's guilt or innocence – even though the relation between the two is obvious.

The situation here is similar: Plaintiff cannot deny that there is a relation between the fact that the Buffalo City Court entered a

---

[47] *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (quoting *Exxon Mobil*, 544 U.S. at 292-93) (internal quotation marks omitted).
[48] *Skinner*, 562 U.S. at 525-29.
[49] *Id.* at 532-33.

judgment and the fact that, many years later, Defendants tried to collect upon that judgment. But consumer debts are often reduced to judgment, and the FDCPA explicitly provides that its protections apply to efforts to collect upon *every* obligation to pay a consumer debt, "whether or not such obligation has been reduced to judgment."[50] And, in any case, the standard for determining whether *Rooker-Feldman* applies is "inextricably intertwined," not "somehow related."

This Court's decision in *Kropelnicki v. Siegel* is directly on point. There, the consumer filed an FDCPA lawsuit in federal court – after debt collectors had obtained a state-court judgment against the consumer – alleging that debt collectors had sent a false, deceptive, and

---

[50] 15 U.S.C. § 1692a(5). *See also Hageman v. Barton*, 817 F.3d 611, 615 n.5 (8th Cir. 2016) ("[T]he FDCPA itself . . . places restrictions on debt collectors' conduct and includes within the definition of 'debt' sums already reduced to judgment. . . . Through this definition, Congress made clear its intent that the FDCPA apply to debt collectors' abusive tactics in the collection of judgment debts. As such, it would be strange, indeed, if the *Rooker-Feldman* doctrine could so expeditiously insulate debt collectors from FDCPA suits alleging abusive tactics during attempted collections on judgments."); *Exxon Mobil*, 544 U.S. at 283; *Id.* at 292 n.8 ("Congress, if so minded, may explicitly empower district courts to oversee certain state-court judgments and has done so, most notably, in authorizing federal habeas review of state prisoners' petitions.").

misleading letter threatening to execute upon the judgment.[51] Despite

the fact that the debt collectors were attempting to enforce a state-court

judgment, and that the collection letter specifically threatened

execution of the state-court judgment, this Court held that the

allegation was not barred by the *Rooker-Feldman* doctrine.[52]

Moreover, other courts routinely hold that federal FDCPA

lawsuits are not barred by *Rooker-Feldman*, even when there is a state-

court judgment in the picture somewhere:

- A federal FDCPA lawsuit against a debt collector who – after obtaining a judgment – mailed a writ of execution to the consumer that did not contain important disclosures required under state law was not barred by the *Rooker-Feldman* doctrine.[53]

- A federal FDCPA lawsuit against a debt collector who – after obtaining a judgment – tried to garnish a bank account that contained nothing but the consumer's exempt Social Security benefits, was not barred by the *Rooker-Feldman* doctrine.[54]

- Several FDCPA lawsuits against debt collectors who – after obtaining judgments – applied for writs of garnishment that included "accrued costs" to which they

---

[51] *See Kropelnicki v. Siegel*, 290 F.3d 118, 124 (2d Cir. 2002).

[52] *See Id.* at 130.

[53] *Resler v. Messerli & Kramer, P.A.*, No. Civ. 02-2510 (PAM/RLE), 2003 WL 19349, at *1-*2 (D. Minn. Jan. 23, 2003)

[54] *Todd v. Weltman, Weinberg & Reis Co.,* 434 F.3d 432, 435-37 (6th Cir. 2006).

23

were not legally entitled, and which were not included in the amounts reduced to judgment, were not barred by the *Rooker-Feldman* doctrine.[55]

- A federal FDCPA lawsuit against a debt collector, who executed upon a judgment with knowledge that the consumer had defenses to garnishment, and without serving a copy of the garnishment form on the consumer as required by state law, was not barred by the *Rooker-Feldman* doctrine.[56]

- A federal FDCPA lawsuit against a debt collector who charged a higher rate of post-judgment interest than he was legally entitled to charge, and who misappropriated payments made by the consumer in satisfaction of the judgment, was not barred by the *Rooker-Feldman* doctrine.[57]

- After a debt collector and a consumer had entered into a state-court consent judgment, a federal FDCPA lawsuit against the debt collector for failing to adhere to the terms of the judgment, and otherwise harassing the consumer during attempts to collect upon the judgment, was not barred by the *Rooker-Feldman* doctrine.[58]

---

[55] *See In re: FDCPA Cognate Cases*, No. 1:13-cv-01340-RJJ, 2016 WL 1273349, at *3 (W.D. Mich. Mar. 28, 2016).

[56] *Whitehead v. Discover Bank*, 118 F. Supp. 3d 1111, 1113-1116 (E.D. Wis. 2015).

[57] *Mueller v. Barton*, No. 4:13-CV-2523 CAS, 2014 WL 4546061, at *2-*4 (E.D. Mo. Sept. 12, 2014) (citing *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008) and *MSK Eyes Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533 (8th Cir. 2008)).

[58] *King v. Legal Recovery Law Offices, Inc.*, No. CV 13-05347-KAW, 2014 WL 938559, at *1-*4 (N.D. Cal. Mar. 6, 2014) (citing *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).

In their Motion to Dismiss filed below, Defendants relied on the Seventh Circuit case of *Harold v. Steel*. In that case, twenty years after a state-court judgment had been entered against a consumer, a debt collector claiming to represent the judgment creditor filed a post-judgment motion asking the state-court to garnish the consumer's wages.[59] A state-court judge entered the garnishment order.[60] Later, the consumer filed a state-court motion to vacate the garnishment order, which the state court denied.[61] The consumer then turned around and filed a federal FDCPA lawsuit, alleging that certain statements made by the debt collector during the state-court motion practice were false statements prohibited by the FDCPA.[62] Under these circumstances, the Seventh Circuit held that the *Rooker-Feldman* Doctrine barred the FDCPA action from being filed in federal court.[63]

But the facts of *Harold* are sharply different from the facts alleged by McCrobie. In *Harold*, the Seventh Circuit applied the *Rooker-Feldman* doctrine not on the basis of the state-court judgment, but on

---

[59] *See Harris v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014)
[60] *See Id.*
[61] *See Id.*
[62] *See Id.*
[63] *See Id.* at 886-87.

the basis of the state-court garnishment order. Observing that the state court issued the garnishment order only after a judicial proceeding, during which the consumer had a full and fair opportunity to litigate the issues, and that the garnishment order was appealable within the state judiciary, the Seventh Circuit reasoned that the state-court garnishment order was sufficiently analogous to a state-court judgment for *Rooker-Feldman* to apply.

Here – even assuming that *Harris* survives *Exxon Mobil* – there is no state-court garnishment order or other similar post-judgment order like the one in *Harris*. In *Harris*, at least there was some kind of state-court order *after* the debt collector's false representations – and at least the state-court order was *based* to some degree on those false representations. Here, Defendants – *not* the New York State judiciary – issued the income executions, without ever applying to the state court for any post-judgment relief. Whereas the Seventh Circuit applied *Rooker-Feldman* on the basis of a judicial garnishment order, here, Defendants argue for application of *Rooker-Feldman* on the basis of the *original judgment*, which was entered many years before Defendants' misleading representations and involved legal issues completely

26

different from the issues raised in this FDCPA case. In other words, Defendants argue for an interpretation of *Rooker-Feldman* that is much more expansive than the Seventh Circuit's interpretation in *Harris* – and, more importantly, that is directly at odds with *Exxon Mobil* and other Supreme Court precedent.[64]

In sum, when Centurion sued McCrobie in Buffalo City Court in 2006, there were three issues: whether McCrobie owed a debt to Providian; the amount of that debt; and whether Centurion had standing to sue McCrobie. This federal FDCPA case involves completely different issues: whether, eight years later, Defendants were legally entitled to enforce the judgment obtained by Centurion; and whether Defendants falsely represented that they were legally entitled when in fact they were not. The two sets of issues are anything but "inextricably intertwined." The injuries alleged by McCrobie were caused, not by the state-court judgment, but by Defendants' false assertions *about* the judgment – and McCrobie is in no way asking the federal judiciary to invalidate decisions already made by the New York State judiciary. For these reasons, *Rooker-Feldman* does not apply, and Plaintiff

---

[64] *See In re: FDCPA Cognate Cases*, 2016 WL 1273349 at *3 (distinguishing *Harold*).

27

respectfully asks this Court to reverse the decision of the district court and to remand for further proceedings.

## II. Defendants violated numerous sections of the FDCPA by threatening to execute and attempting to execute upon thousands of New York State court judgments without any legal right to do so.

Defendants – in addition to raising a number of threshold issues – argued that the FAC should be dismissed and that the proposed SAC would be futile because their alleged actions toward McCrobie did not violate the FDCPA. Specifically, Defendants argued that "NY CPLR 5019(c) does not require an assignments [sic] to be recorded in order for an assignment to be deemed valid," that "mere recitations of the elements of various FDCPA claims are insufficient to withstand a motion for failure to state a claim," that "Plaintiff's deficient and conclusory claims are insufficient to withstand a motion for failure to state a claim," and – most implausibly of all – that "Plaintiff's claims do not rise to the level of a material statement under the FDCPA."

But the acts and omissions alleged in the FAC and proposed SAC are anything but immaterial. Plaintiff is not trying to make a few bucks by transmuting a minor technical deficiency under the NY CPLR into an FDCPA violation. To the contrary, the gravamen of Plaintiff's FAC

28

and proposed SAC is that McCrobie owed a debt to Centurion that was reduced to judgment; years later, Defendants, with absolutely no legal right to do so, told McCrobie that the Centurion judgment was now owed to *them*. When McCrobie, who never received notice of the assignment as required by law, refused to voluntarily comply with Defendants' shakedown, Defendant ordered the Buffalo City Marshall to grab part of McCrobie's paycheck on the basis of the Centurion judgment – again, with absolutely no legal right to do so. To put it as bluntly as possible, Defendants used New York State legal forms to *steal* from McCrobie. FDCPA allegations do not get more material than that.

Because the district court dismissed McCrobie's case on the basis of the *Rooker-Feldman* doctrine, it did not reach the substance of his claims. Nevertheless, McCrobie respectfully asks this Court to hold that his proposed SAC does state numerous claims against Defendants under the FDCPA and, thus, that the proposed SAC would not be futile. To this end, McCrobie's allegations are detailed in the sections that follow. Because McCrobie's § 1692e(3) claims regarding Houslanger's

29

false claims of attorney involvement raise somewhat different issues, these are discussed separately in the following Part.

## A. Defendants had no right to collect upon the state-court judgment, because they never actually purchased the judgment or the right to collect upon it from Centurion.

As explained above, Plaintiff alleges that Defendants were strangers to the debt that McCrobie owed Centurion, as well as to the state-court judgment entered by the Buffalo City Court in *Centurion Capital Corporation v. McCrobie*. In other words, Plaintiff alleges that Defendants never even purchased the state-court judgment or the right to collect upon the state-court judgment from Centurion. Nevertheless, Defendants represented to McCrobie as well as to third parties that they *did* own the right to collect upon the state-court judgment, using New York State court forms to threaten McCrobie and to misappropriate part of his paycheck.

This is a serious allegation that, if proven at trial, would shock the conscience – but Plaintiff is not making the allegation without a basis in fact. As explained above, McCrobie's attorneys – who have represented him both in this FDCPA action and in his state-court motion to vacate the judgment – repeatedly asked Defendants to provide documentary

30

evidence that they owned the right to collect upon Centurion's state-court judgment. They never did. The *only* document that Defendants ever provided to back up their claims of ownership was a "Bill of Sale," dated March 5, 2007, between Defendant Palisades and another company called Great Seneca Financial Corporation, purporting to transfer an unknown number of unspecified accounts.

You read that correctly: In support of their claim that Defendant Palisades owned the right to collect upon a judgment entered in favor of Centurion on March 8, 2007, Defendant Palisades produced a "Bill of Sale" between itself and a *completely different company*, with *no connection to the judgment*, that was dated *three days before the judgment was entered*, and that did not mention McCrobie's name or any other personal identifiers or the Buffalo City Court docket number. In other words, there *is no connection* between the Great Seneca Bill of Sale and the Centurion judgment or McCrobie; it is almost as if Defendants, faced with McCrobie's attorneys' reasonable request for information, blindly pulled a random piece of paper from a filing cabinet. In short, Defendants seem to have no documentary evidence of ever obtaining anything from Centurion, let alone the state-court

31

judgment entered against McCrobie. For these reasons, Plaintiff had more than an adequate basis to allege that Defendants never purchased the state-court judgment from Centurion.

Generally speaking, the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."[65] Here, McCrobie owed money to Centurion by virtue of a state-court judgment Centurion had obtained against him; Defendants told McCrobie that the way to satisfy that judgment was to send money to *them*, not to Centurion, even though Defendants lacked any connection to the judgment or any legal right to collect it. That was a false, deceptive, and misleading representation – a big one – and Defendants made matters even worse by actually instructing the Buffalo City Marshall to take some of McCrobie's money. Considering these allegations, Defendants' argument below that Plaintiff failed to allege a "material" violation of the FDCPA is jaw-dropping. Of course Defendant's acts and omissions were material. Defendants brazenly attempted to bilk McCrobie, and partially succeeded to the tune of $572.45.

---

[65] 15 U.S.C. § 1692e.

Once the general outlines of Defendants' behavior are understood, it becomes easier to see how that behavior violated specific sections of the FDCPA:

- Section 1692e of the FDCPA prohibits debt collectors from using "any false deceptive, or misleading misrepresentation[s] or means in connection with the collection of any debt." Defendants delivered a document styled as an "Income Execution" to Plaintiff, which explicitly stated that Defendant Palisades was the current judgment creditor on the Buffalo City Court judgment, when in fact a completely unrelated company was the current judgment creditor. That was a misrepresentation that could have fooled McCrobie into sending his money to the wrong debt collector, without even making a dent in the amount of debt he in fact owed to Centurion. Thus, this was a material violation of § 1692e.

- Section 1692e(2)(A) of the FDCPA prohibits debt collectors from making any "false representation of the character, amount, or legal status of any debt." Defendants delivered a document styled as an "Income Execution" to Plaintiff, which explicitly stated that Defendant Palisades had the legal right to collect on the Buffalo City Court judgment originally entered in favor of Centurion. As explained above, however, Defendants had no such legal right – thus, Defendants' statement misrepresented both the "character" and "legal status" of the Buffalo City Court judgment. Or, put another way, Defendants were misrepresenting the amount of debt McCrobie owed: while they claimed he owed them $982.12, he really owed them nothing.

33

- Section 1692e(4) of the FDCPA prohibits debt collectors from "represent[ing] or impl[ying] that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful . . . ." Defendants delivered a document styled as an "Income Execution" to Plaintiff, explicitly stating that Defendants would garnish Plaintiff's wages unless Plaintiff paid Defendants $982.12. But as explained above, Defendants had not purchased the state-court judgment. As such, they were complete strangers to the judgment, and lacked any legal right to execute upon the judgment by garnishing Plaintiff's wages. As such, the garnishment threatened by Defendants was not lawful, and violated § 1692e(4).

- Section 1692e(5) of the FDCPA prohibits debt collectors from making "threat[s] to take any action that cannot legally be taken or that is not intended to be taken. As just explained above, Defendants – as complete strangers to the Buffalo City Court judgment – could not legally garnish McCrobie's wages in order to satisfy that judgment. Thus, Defendants' "Income Execution" threatening to do so was a threat to take action that could not legally be taken that violated § 1692e(5).

- Section 1692e(10) of the FDCPA prevents debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt . . . ." As already explained, Defendants' representations that Defendant Palisades was the judgment creditor on the Buffalo City Court judgment and that McCrobie owed Defendants money were false. Moreover, those false representations were material, because they could have coaxed McCrobie into paying money to the wrong debt collector, without actually reducing the amount he owed to the rightful owner of the state-court judgment.

34

- Section 1692f prohibits any debt collector from using an "unfair or unconscionable means to collect any debt." Here, Defendants did more than simply misrepresent that McCrobie owed them a debt – they did it on state-court form with a case caption and the intimidating heading, "Income Execution." They threatened to take money directly out of McCrobie's paycheck without any legal right to do so. Then, Defendants sent the "Income Execution" on to McCrobie's employer and the Buffalo City Marshall. As a result, McCrobie was exposed to needless embarrassment at his workplace. And, in the end, Defendants actually grabbed $572.45 from McCrobie's paychecks. And, the whole time, Defendants were representing that each of their actions had been blessed by the New York State judiciary, when of course they had not. Defendants' behavior epitomizes the words "unfair" and "unconscionable," and it certainly violated § 1692f.

- Section 1692f(1) of the FDCPA prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." As explained above, while McCrobie did owe a debt to Centurion that had been reduced to judgment, he owed nothing at all to Defendants. By sending McCrobie an "Income Execution" to collect $982.12, Defendants misrepresented the amount McCrobie owed them – zero – and violated § 1692f(1).

- Section 1692c(b) of the FDCPA provides that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." Defendants violated § 1692c(b) by sending the document that it had styled as an "Income Execution" to McCrobie's employer and to the Buffalo City Marshall. While §

35

1692c(b) does include an exception "to effectuate a postjudgment judicial remedy," "as reasonably necessary," Defendants are not entitled to take advantage of that exception here. Centurion, or any other company that had purchased the state-court judgment from Centurion, could have taken advantage of that exception. But because Defendants had no legal right "to effectuate a postjudgment judicial remedy" against McCrobie, it is impossible for Defendants to argue that their "Income Execution" was "reasonably necessary" to effectuate such a remedy.

In short, McCrobie has alleged that Defendants violated numerous sections of the FDCPA, and all of them are viable claims. Defendants' argument that none of the violations are material is outlandish (they took $572.45 away from him without any legal right to take it!). Moreover, Defendants' argument that Plaintiff's claims are "conclusory" cannot be taken seriously (the proposed SAC is 38 pages long and contains 11 exhibits!). For these reasons, Plaintiff's FAC and proposed SAC state claims upon which relief can be granted, and he respectfully asks this Court to remand the case to the district court with instruction to permit Plaintiff to file the SAC.

**B.    Defendants had no right to collect upon the state court judgment, because Plaintiff never received notice of the assignment as required by state court precedent.**

36

Even if the evidence produced over the course of discovery ultimately shows that Defendants purchased the state-court judgment, Defendants *still* lacked any legal right to execute the state-court judgment – and, thus, Defendants *still* violated the various sections of the FDCPA listed above. Purchasing the state-court judgment from Centurion was one condition precedent Defendants needed to fulfill before they could lawfully execute upon the state-court judgment – but it was not the *only* condition precedent Defendants needed to fulfill. There were two others. First, Defendants could not legally execute upon the state-court judgment until Centurion – the company that obtained the judgment – notified McCrobie that it was assigning the judgment to Defendant Palisades. Second, Defendants could not legally execute upon the state-court judgment until Defendants filed in the Buffalo City Court Clerk's office "a copy of the instrument on which [Defendants'] authority [was] based, acknowledged in the form required to entitle a deed to be recorded . . . ."[66] This section will explain the former of these two conditions precedent, and the next section will explain the latter.

---

[66] N.Y. C.P.L.R. 5019(c).

To fully understand why Defendants' efforts to execute upon the state-court judgment before Centurion notified McCrobie that it was selling the judgment, one must first understand the New York state-court case of *Chase Bank USA v. Cardello*.[67] In 2007, Chase sued Cardello in the New York City Civil Court, County of Richmond, to recover an unpaid consumer debt. Chase obtained a default judgment in 2008 after Cardello failed to appear, possibly due to defects in the service of process.[68] Some years later, a different company called DebtOne attempted to file what purported to be an "assignment of judgment," in advance of attempting to enforce the judgment that Chase had obtained against Cardello.[69] But the court rejected the "assignment of judgment," concluding that Cardello had a legal right under New York State law to hear directly from Chase, the original judgment creditor, that the judgment against him had been assigned.[70] Unless and until Cardello received that notification directly from Chase, DebtOne could not legally take any steps to collect upon the state-court

---

[67] *Chase Bank USA v. Cardello*, 27 Misc. 3d 791 (N.Y. Civ. Ct. 2010).

[68] *See Id.* at 794.

[69] *See Id.* at 792.

[70] *See Id.* at 794.

judgment.[71] It his well-reasoned opinion, Judge Straniere concluded

that such notice was necessary to protect consumers – and that the

notice must necessarily come from the original judgment creditor, *not*

the assignee.[72]

Again, it is important to note that *Cardello* – a state court case –

did not hold, as a matter of federal law, that failure on the part of the

original judgment creditor to notify the judgment debtor of an

assignment violates the FDCPA. Rather, *Cardello* holds, as a matter of

*state* law, that any attempt to assign a New York state-court judgment

is *ineffective* unless the assignor (that is, the original judgment

creditor) first notifies the judgment debtor.[73] Or, stated another way,

unless and until a judgment creditor gives the notice required by

*Cardello*, the assignment of the state-court judgment *has not happened*.

---

[71] *See Id.*

[72] *See Id.* at 793-94.

[73] *Accord In re Pinpoint Technologies, LLC*, 45 Misc. 3d 1223(A), 2014 WL 6780640, at *5 (N.Y. Civ. Ct. 2014) ("This court has held that in consumer credit litigation, the assignor of the . . . judgment has an obligation to serve a notice of the assignment of the debt on the defendant . . . . The notice must be from the original creditor, or the judgment creditor, to the defendant at the defendant's last known address."); *Centurion Capital Corp. v. Guarino*, 35 Misc. 3d 1219(A), 2012 WL 1543286, at *9 (N.Y. Civ. Ct. 2012) ("This of course makes the purported Notice of Assignment defective as it is not from the same entity that brought the litigation.").

Plaintiff has alleged that Centurion never notified him that it was assigning the Buffalo City Court judgment to Defendant Palisades. Thus, as a matter of state law, the assignment of the state-court judgment *did not happen*. It follows that, in August 2014, when Defendants served the "Income Execution," Centurion – *not* Defendant Palisades – was the judgment creditor that was entitled to garnish McCrobie's wages, to resort to other post-judgment remedies, and, generally speaking, to collect upon the state-court-judgment. Because this Court may not change the rule of state law that necessitates that conclusion, the only question before this Court is whether, as a matter of federal law, Defendants attempt to execute upon a state-court judgment that it did not own violated the FDCPA.

The answer is yes. As explained above, the "Income Execution" explicitly stated that Defendant Palisades was the judgment creditor, that Defendant Palisades was legally entitled to garnish McCrobie's wages, and instructed McCrobie that, in order to pay down the state-court judgment, he was required to make payments to Defendant Palisades. But Defendant Palisades *was not* the judgment creditor, *was not* legally entitled to garnish McCrobie's wages, and payments to

40

Defendant Palisades *would not* have paid down the state-court judgment. *Of course* the "Income Execution" violated the FDCPA's prohibition of false, deceptive, or misleading representations.

At least two district courts within this Circuit have arrived at that conclusion.[74] Both courts reasoned that since, under New York State law, the purported assignments of the state-court judgments had never happened, a restraining notice or a collection letter threatening garnishment constituted threats of actions that the respective defendants could not legally take.

The same can be said here. As explained above, there is every reason to doubt that Centurion ever agreed to sell the state-court judgment it had obtained against McCrobie to Defendant Palisades. But even assuming that Centurion and Defendant Palisades struck such an agreement, under the applicable rule of New York State law, the assignment *never happened* because Centurion never notified McCrobie. Thus, Defendant Palisades was not the judgment creditor, and Defendants could not legally garnish McCrobie's wages. At this

---

[74] *See Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-CV-7539 (MKB), 2016 WL 1274541, at *10-*11 (E.D.N.Y. Mar. 31, 2016); *Musah v. Houslanger & Associates, PLLC* ("*Musah II*"), 962 F. Supp. 2d 636, 637-39 (S.D.N.Y. 2013).

point, the next steps in the logic are identical to those described above in Section II.A. In other words, because Defendants had no legal right to execute upon the state-court judgment, Defendants violated §§ 1692e,1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692c(b), for the same reasons as articulated in the bullet points in the previous section. The logic holds, regardless of which condition precedent (Centurion and Defendant Palisades never agreed to an assignment, or Centurion never notified McCrobie of the assignment) is lacking.

During the district court proceedings, Defendants argued that Plaintiff was engaging in a "false, narrow, and overly mechanical reading" of the FDCPA, that sought to transform any and every violation of state law into an FDCPA violation.[75] But nothing could be further from the truth. Plaintiff is *not* alleging that Defendants violated the FDCPA by failing to notify McCrobie of the assignment – in fact, such an allegation would make little sense, since, under *Cardello*, only Centurion, and not Defendants, could notify McCrobie of the assignment. No, what Plaintiff is alleging is that, under applicable state

---

[75] Cite to Appendix, ECF#25 at 24, *citing to Lindbergh v. Transworld Sys.*, 846 F. Supp. 175, 181 (D. Conn. 1994) (Cabranes, J.).

law, no assignment of the state-court judgment *ever happened*. A debt collector told a consumer to pay it money, when in fact the consumer did not owe the debt collector money. Thus, this case is not an attempt to capitalize on a technical violation of state law; to the contrary, Plaintiff alleges that Defendants made false, deceptive and misleading representations squarely and explicitly prohibited by the FDCPA.

This Court's recent decision in *Gallego v. Northland Grp. Inc.* is a helpful contrast. There, a consumer received a debt-collection letter that failed to include the name of a person whom the consumer could call back.[76] The text of the FDCPA does not explicitly require each collection letter to include a call-back number; however, the New York City Administrative Code does.[77] The consumer sued the debt collector for violations of §§ 1692e(10) and 1692f, arguing in essence that any violation of any state law on the part of a debt collector automatically qualifies as a "false representation or deceptive means to collect," or an "unfair or unconscionable means to collect" within the meaning of the FDCPA.[78] This Court held that Gallego failed to state FDCPA claims

---

[76] *See Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 125 (2d. Cir. 2016).
[77] *See Id.*
[78] *See Id.*

because the FDCPA does not automatically "incorporate state – or local – law standards of conduct."[79]

*Gallego*, then, stands for the proposition that "violations of state and local debt collection statutes laws are not *per se* actionable under the FDCPA."[80] But that is not to say that federal courts applying the FDCPA *never* look to state law to answer certain questions. This is because one of the main purposes of the FDCPA is to prevent debt collectors from misrepresenting consumers' legal rights and obligations – or their own.[81] But often, the legal rights and obligations at issue are created by state law – not by the FDCPA.

For example, the FDCPA is silent as to how those obligations are formed. Thus where a debt collector represents that a consumer owes a

---

[79] *See Id.* at 527.

[80] *Id.*

[81] *See, e.g.*, 15 U.S.C. § 1692e(2) (prohibiting "[t]he false representation of the character, amount or legal status of any debt; or any services rendered or compensation which may be lawfully received by any debt collector for the collection of any debt"); § 1692e(4) (prohibiting "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such an action is lawful . . ."); § 1692e(5) (prohibiting "[t]he threat to take any action that cannot legally be taken . . . ."); § 1692e(7) (prohibiting "[t]he false representation or implication that the consumer committed any crime . . .").

debt, and the consumer alleges that this representation is false because the consumer never actually entered into a contract with the creditor, the court must of necessity look to state-law contract formation principles.[82] Similarly, the FDCPA is silent on the question of how to calculate amounts of debts; thus, in cases brought under § 1692e(2)(A) of the FDCPA alleging false representations of amounts of debts, federal courts must often look to relevant state-law principles.[83] Thus, it

---

[82] *See, e.g.*, *Erickson v. Johnson*, No. Civ.05-427(MJD/SRN), 2006 WL 453201, at *4-*5 (D. Minn. Feb. 22, 2006) (applying Minnesota state law to determine whether consumer owed debt, where debt collector stated that consumer owed a debt, and consumer alleged this was a false statement that violated the FDCPA).

[83] *See, e.g.*, *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 997 (9th Cir. 2012) ("As Nevada law does not permit ICC to add nor to collect such interest and fees, the communications were false and misleading (by suggesting that ICC was entitled to collect such fees) and violated the FDCPA); *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 111-12 (7th Cir. 2008) (analyzing whether debt collector had legal right to charge consumer 15% collection fee under principles of Wisconsin state law); *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999) ("*If state law expressly permits service charges*, a service charge may be impose even if the contract is silent on the matter; *If state law expressly prohibits service charges*, a service charge cannot be imposed even if the contract allows it . . . .") (emphases in original); *Nance v. Ulferts*, 282 F. Supp. 2d 912, 918 (N.D. Ind. 2003) (holding that consumer had stated a claim under § 1692e(2)(A) for collecting exorbitant amounts of interest not allowed under state usury law). *See also Fausset v. Mortgage First, LLC*, 2010 WL 987169, at *6 (N.D. Ind. Mar. 12, 2010) ("Federal courts look to state law to determine if a fee is 'permitted by law' under section

should come as no surprise that, in FDCPA cases involving unfair or deceptive use of state-court post-judgment remedies, the state law governing those post-judgment remedies would play a key role.[84]

Here, Defendants committed a core violation of the FDCPA by misrepresenting to whom Mr. McCrobie owed a debt – though, of course, in order to determine whether Defendants' representation was false, the Court must necessarily turn to state law to determine to whom Mr. McCrobie owed the debt. As the Sixth Circuit has said in a case that, like this one, involved post-judgment procedures that failed to comply with state law,

> We agree that Congress did not turn every violation of state law into a violation of the FDCPA. But that does not mean that a violation of state law can never *also* be a violation of the FDCPA. The proper question in the context of an FDCPA claim is whether the plaintiff alleged an action that falls within the broad range of

---

1692f(1).") (citing *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1140 (N.D. Ill. 1998)).

[84] *See Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014) (holding that maintaining a lien that violated state law constituted a violation of the FDCPA); *Asch v. Teller Levit & Silvertrust, P.C.*, No. 00 C 3290, 2003 WL 22232801 (N.D. Ill. Sept. 26, 2003) (holding that debt collector who applied payments to a state-court judgment using a method not allowed by state law, and which ultimately cost the consumer more than the method allowed by state law, violated the FDCPA).

> conduct prohibited by the Act. The legality of the
> action taken under state law may be relevant, as
> it is in this case.[85]

Because Plaintiff has alleged a core violation of the FDCPA, he

respectfully asks this Court to reverse the judgment of the district

court, and to remand for further proceedings.

### C. Defendants had no right to collect upon the state court judgment, because they never publicly filed a copy of the assignment instrument as required by CPLR 5019(c).

As explained at the beginning of section II.B above, before

Defendants could execute upon the state-court judgment obtained by

Centurion, three conditions precedent had to be fulfilled. The third and

final of these conditions was that Defendants were required to comply

with the requirements of N.Y. C.P.L.R. 5019(c). If this conditions

precedent was lacking – and Plaintiff alleges that it was – then

Defendants were not legally entitled to serve the "Income Execution,"

and Defendants violated all of the FDCPA sections listed in the bullet

points at the end of section II.A.

N.Y. C.P.L.R. 5019(c), the heading of which reads, "Change in

judgment creditor," provides:

---

[85] *Currier*, 762 F.3d at 537 (citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010)).

> A person other than the party recovering a
> judgment who becomes entitled to enforce it,
> shall file in the office of the clerk of the court in
> which the judgment was entered or, in the case of
> a judgment of a court other than the supreme,
> county or a family court which has been docketed
> by the clerk of the county in which it was entered,
> in the office of such county clerk, a copy of the
> instrument on which his authority is based,
> acknowledged in the form required to entitle a
> deed to be recorded, or, if his authority is based
> on a court order, a certified copy of the order.
> Upon such filing the clerk shall make an
> appropriate entry on his docket of the judgment.

New York State courts take the C.P.L.R. 5019(c) requirement seriously,

holding that failure to docket a duly acknowledged copy of the

assignment instrument constitutes grounds for rejecting the

assignment.[86] Moreover, under New York State law, a successor in

interest to a judgment creditor has no legal authority to use post-

judgment remedies until the assignment instrument has been docketed

under C.P.L.R. 5019(c).[87] Thus, under the statutes and judicial

---

[86] *See In re Pinpoint Technologies, LLC*, 45 Misc. 3d 1223(A), 2014 WL
6780640, at *2 ("[F]or the reasons set forth below, all of these Notice of
Assignment forms are rejected."); *Cardello*, 27 Misc. 3d at 795 ("The
clerk of the court is directed to reject the assignment of judgment from
Chase to DebtOne until the defects set forth above are corrected.").
[87] *See Tri City Roofers, Inc. v. Northeastern Indus. Park*, 461 N.E.2d
298, 299 (N.Y. 1984) ("The intent of [C.P.L.R. 5019(c) is . . . to establish
the assignee's authority to enforce the judgment."); *Kohl v. Fusco*, 164

48

precedents of New York State, docketing a duly acknowledged copy of the assignment instrument in the office of the Buffalo City Court Clerk was a condition precedent required before Defendants could serve the "Income Execution."

Here, Plaintiff must concede that two district courts have also held that that complying with C.P.L.R. 5019(c) is *not* a condition precedent required before an assignee debt collector may enforce a judgment.[88] While those district-court cases admittedly cut against

---

Misc. 2d 431, 437 (N.Y. Civ. Ct. 1994) ("The court finds no merit to Kramlaup's application seeking an order to file the referee's deed and assignment of interest for the subject premises nunc pro tunc as of August 2, 1994 pursuant to CPLR § 5019(c). . . . [T]he court will not, at this juncture, give retroactive judicial sanction to absolve Kramlaup from that which it failed to do at the appropriate time . . . . [T]he new owner improperly effectuated this eviction . . . .").

[88] *See Moukengeschaie*, 2016 WL 1274541, at *9-10 ("The Court therefore dismisses Plaintiff's claim that the Collection Letter violates section 1692e(4), e(5) and f(6) by threatening actions that Defendants cannot legally take based on a failure to file the assignment with the relevant court pursuant to section 5019(c)."); *Musah v. Houslanger & Assocs., PLLC* ("*Musah I*"), 2012 WL 5835293, at *3 (S.D.N.Y. Nov. 16, 2012) ("Since 5019(c) does not require that an assignment be filed with the court in order for the assignee to be entitled to enforce the judgment and since Musah does not allege any other defect with the assignment . . . or reasons that Houslanger did not have a right to collect on the Judgment, Musah's FDCPA allegations are without basis, and he fails to state a claim against Houslanger for violation of the FDCPA.").

49

Plaintiff's claims here, he respectfully argues that they were wrongly decided.

As explained above, the New York State judiciary's definitive interpretation of C.P.L.R. 5019(c) is that failing to comply with that statute is grounds for "rejecting" an assignment of a judgment. The highest court of the State of New York has explained that the intent of C.P.L.R. 5019(c) is to "establish the assignee's authority to enforce the judgment." Moreover, a New York State court will not retroactively bestow its blessing on a post-judgment enforcement action taken by an assignee who had failed to comply with C.P.L.R. 5019(c). Here, Plaintiff's FDCPA claims raises the antecedent question of who, exactly, was legally entitled to execute upon the state-court judgment. That question must necessarily be decided according to principles of state law. As such, Plaintiff respectfully believes that the federal courts hearing those FDCPA claims are obligated to adhere to the state-court decisions cited above.

In arriving at a different conclusion, both the *Moukengeschaie* and the *Musah I* courts relied heavily on this Court's decision in *Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc.*, which

50

contains language indicating that C.P.L.R. 5019(c) "is clearly intended for the benefit of the assignee, being designed to protect him against payment of the judgment to the wrong party . . . ."[89] But *Law Research Serv.* – a case decided under the old Bankruptcy Act – is entirely off-point. The case was a classic "battle of the creditors," in which the question was whether compliance with C.P.L.R. 5019(c) was required in order for the assignee to perfect its interests in the state-court judgment. *Law Research Serv.* court had no occasion to consider whether C.P.L.R. 5019(c) was in any way intended to protect the debtor; the point of the language quoted above was that the drafters of C.P.L.R. 5019(c) did not intend for it to have anything to do with perfecting security interests.

Here, a federal court's sole role is to observe whether New York State courts have required compliance with C.P.L.R. 5019(c) as a condition precedent before an assignee becomes legally entitled to enforce a judgment. Plaintiff respectfully suggests that, together, the four New York State cases cited above – *Pinpoint Technologies*, *Cardello*, *Tri-City Roofers*, and *Kohl* – stand for the proposition that an

---

[89] *See Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc.*, 498 F.2d 836, 840 (2d Cir. 1974).

assignment not docketed with the clerk as required by C.P.L.R. 5019(c) is simply invalid.

Plaintiff alleges that Defendants never complied with C.P.L.R. 5019(c). Therefore, Defendants had no legal right to serve the "Income Execution," and Defendants violated all of the sections of the FDCPA listed in the bullet points at the end of section II.A.

**III. Houslanger violated § 1692e(3) of the FDCPA by signing and issuing income executions upon New York State court judgments, without reliable knowledge that their client was in fact the judgment creditor, and without conducting even a cursory investigation to verify that their client had the legal right to execute upon the judgments.**

Plaintiff's allegations that the Houslanger Defendants violated § 1692e(3) arise from the same facts as Plaintiff's other allegations, but raise somewhat different issues. Section 1692e(3) of the FDCPA prohibits "false representation[s] or implication[s] that any individual is an attorney or that any communication is from an attorney." The Houslanger Defendants violated this section by signing the "Income Execution" in their capacities as attorneys.

Plaintiff does not dispute that the Houslanger Defendants are lawyers licensed to practice in New York State, operating what purports to be a law office. Thus, Plaintiff is not denying that the "Income

52

Execution" was "from" attorneys in the literal sense of the word. But this Court has held that that, alone, does not fulfill § 1692e(3)'s requirements: "[S]ome degree of attorney involvement is required before a letter will be considered 'from an attorney' within the meaning of the FDCPA."[90] Moreover, this Court has long held that the use of an attorney's signature on a collection letter implies that the collection letter is "from" the attorney who signed it – that is, that the attorney "had analyzed the debtor's case and had rendered legal advice to the creditor concerning the case."[91] Additionally, this Court has held that where collection letters are sent out on law firm letterhead, without any review of the recipient's individual case, that such letters misrepresent the level of attorney involvement pursuant to §1692e.[92] In short, "[o]ne cannot, consistent with FDCPA, *mislead* the debtor regarding meaningful 'attorney' involvement in the debt collection process."[93]

McCrobie's § 1692e(3) claim, then, is not about whether the individual who signed the "Income Execution" was literally an attorney;

---

[90] *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir. 2003) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993)).
[91] *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363-364 (2d Cir. 2005) (citing *Clomon*, 988 F.2d at 1321).
[92] *Id.* at 364 (citing *Miller*, 321 F.3d at 301).
[93] *Greco*, 412 F.3d at 364.

rather, the issue is whether the least-sophisticated consumer receiving the "Income Execution" would be misled into believing that attorneys were already meaningfully involved in the collection of her debt. If so, then this would be a material violation because "[a]n unsophisticated consumer, getting a letter – or other communication – from an 'attorney,' knows the price of poker has just gone up."[94]

And if an attorney ups the ante merely by signing a collection letter, he ups it even further by signing an "Income Execution" like the one that is the subject of McCrobie's allegations. While a collection letter signed by an attorney usually appears on firm letterhead, the "Income Execution" goes further by including a case caption. It also contains phrases such as "Enforcement Officer" and "judgment," and cites to numerous New York State statutes. And most importantly, it "commands" McCrobie to "immediately start paying" the Buffalo City Marshall, or else it will be forcibly taken out of McCrobie's paycheck.

An income execution issued under N.Y. C.P.L.R. 5230(b) and § 1501 of the N.Y. Uniform City Court Act is – much like subpoena issued under Fed. R. Civ. P. 45 – a command of the court. It can be issued by

---

[94] *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).

54

the clerk of the court but, most often, it is issued by the attorney for the judgment creditor,[95] acting as an "officer of the court." In short, the "Income Execution" does not merely have the overall feel of an official legal document –it *is* an official legal document.

Thus, the "Income Execution" issued by the Houslanger Defendants would have an even greater effect on the least sophisticated consumer than a collection letter on law-firm letterhead. Looking at the "Income Execution," the least sophisticated consumer would conclude that it was backed by the authority of the court, and that information it contained was accurate to the satisfaction of the court. In other words, the "Income Execution" exudes a type of authority that not even a collection letter on law-firm letterhead conveys. When a consumer receives an "Income Execution," the consumer knows that the price of poker has just gone *way* up.

Under these circumstances, and following this Court's § 1692e(3) precedents, at attorney who signs an income execution as an officer of the court is under a duty to take at least some minimal steps to satisfy himself that his client is entitled to garnish a consumer's wages. Here,

---

[95] *See* N.Y. C.P.L.R. 5230(b).

it is not necessary for the Court to decide exactly what steps are necessary, because Plaintiff's proposed SAC alleges that the Houslanger Defendants took no steps at all.

That allegation is more than plausible. As explained in the proposed SAC, McCrobie's attorneys – who also filed a motion to vacate the judgment in the Buffalo City Court on his behalf – repeatedly asked the Houslanger Defendants to provide documentary evidence that Defendant Palisades had taken assignment of the judgment. The Houslanger Defendants never produced any kind of agreement between Defendant Palisades and Centurion; instead, they produced a "Bill of Sale" between Palisades and a *completely different company*, that had *no connection to the judgment*, that was dated *three days before the judgment was entered*, and that did not mention McCrobie's name or any other personal identifiers or the Buffalo City Court docket number. Moreover, as explained above in section II.C, Defendant Palisades was never listed in the state court docket as a substitute judgment creditor. Because the Houslanger Defendants had not actually represented the party that first obtained the state-court judgment against McCrobie, and because the Houslanger Defendants had no first-hand knowledge of

56

the transfer of the judgment, *at the very least* § 1693e(3) required the Houslanger Defendants either to check the Buffalo City Court docket or to ask their client for documents demonstrating that they had purchased the judgment against McCrobie. Obviously, they did neither. The plausibility of the allegations in the proposed SAC is further bolstered by the Houslanger Defendants' previous history, which is explained in detail in the proposed SAC.[96]

In summary, signing an "Income Execution" is a special privilege; apart from the clerk of a court, only a licensed attorney is allowed to do it. The power to forcibly drain money from ordinary consumers' paycheck is an awesome power, and the least sophisticated consumer would expect that with that awesome power comes at least some modicum of responsibility. Thus, the least sophisticated consumer, seeing the Houslanger Defendants' signature at the bottom of the "Income Execution," would gather that they had at least taken some minimal steps to make sure that Defendant Palisades actually had legal authority to execute upon the state-court judgment. The Houslanger Defendants, however, took no steps at all to verify this. By

---

[96] SAC, at ¶¶ 68-71. A. 198-202.

57

misrepresenting that they had meaningfully reviewed the particulars of the Buffalo City Court judgment, the Houslanger Defendants violated § 1692e(3). Because he has stated a claim under this section of the FDCPA, Plaintiff respectfully asks this Court to reverse the judgment of the district court and to remand for further proceedings.

## IV. Plaintiff's FDCPA claims are not time-barred.

The opening salvo in Defendants' scattershot Motion to Dismiss was their argument that the FDCPA's one-year statute of limitations barred each and every of Plaintiff's claims.[97]

The district court quickly and correctly dispatched the statute-of-limitations argument. As the district court's Decision and Order pointed out, "there is no question that the latest date upon which the one year period [under 15 U.S.C. § 1692k(d)] begins to run is the date when a plaintiff receives an allegedly unlawful communication."[98] Defendants mailed the deceptive "Income Execution" on August 28, 2014; Plaintiff

---

[97] *See* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.").

[98] *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 158 (E.D.N.Y. 2007) (citing *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 n.2 (2d Cir. 1992)).

filed his FDCPA action on January 6, 2015 – well within the one-year limitations period.

The bottom line is that there is no fair reading of the FAC or proposed SAC under which it might be said that Plaintiff's claims accrued in 2007. Defendants' statute-of-limitations argument is therefore not only meritless, but borderline frivolous. For these reasons, the portion of the district court's decision holding that Plaintiff's FDCPA claims were not time-barred was correct.

## V.    None of the other threshold issues raised by Defendants have merit.

### A. There is no basis for federal courts to exercise *Colorado River* abstention.

Fifth among the flurry of arguments in Defendants' Motion to Dismiss was its argument that the federal courts ought to have abstained from considering Plaintiff's FDCPA case under the doctrine of *Colorado River Water Conservation Dist. v. United States*.[99] But the

---

[99] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Supreme Court has repeatedly emphasized that *Colorado River* abstention is reserved for "exceptional circumstances."[100]

In any case, *Colorado River* abstention – which is an option only when there is *ongoing, duplicative* state-court litigation[101] – simply does not apply here. As explained above, the Buffalo City Court has issued an Order vacating the state-court judgment, so the state-court litigation is no longer ongoing. Moreover, McCrobie's motion to vacate the judgment in Buffalo City Court addressed itself only to the issue of whether he had been properly served in 2006 – whereas this federal FDCPA case addresses itself only to the issue of whether Defendants made false, misleading, and deceptive representations in 2014. Thus, the state-court litigation was never duplicative. Moreover, the vast majority of claims that McCrobie brings in this federal lawsuit are premised on a federal law, the FDCPA. "[T]he presence of federal-law issues must always be a major consideration weighing against

---

[100] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18 (1983).

[101]

60

surrender" jurisdiction under the doctrine of *Colorado River*.[102] In short, Defendants' invocation of *Colorado River* abstention is a non-starter.

## B. Todd Houslanger, a debt collector, is liable for his violations of the FDCPA.

In their opposition to Plaintiff's Motion to Amend His Complaint, Defendants argued that the proposed SAC was futile because it had not sufficiently alleged individual liability on the part of Todd Houslanger. But, as alleged in the proposed SAC, Houslanger managed and personally developed the patterns and practices of the Houslanger Firm with respect to the collection of consumer debts as alleged in this complaint, approved the signing and serving of income executions by himself and other employees of the Houslanger Firm on behalf of purported assignees of judgments without first conducting an investigation to determine whether proof of the purported assignment could be established, and because the tortious conduct alleged in this complaint done in accordance with the instructions of Todd Houslanger in his capacity of managing attorney of the Houslanger Firm.[103] These allegations are more than sufficient to show that Houslanger was

---

[102] *Moses H. Cone*, 460 U.S. at 26.

[103] SAC, at ¶ 86(h). A. 211-12.

61

personally involved in the FDCPA violations described in the proposed SAC. Contrary to Defendants' arguments in their Motion to Dismiss, Plaintiff is *not* attempting to hold Houslanger liable merely because he is a shareholder of the Houslanger Firm. Moreover, there is no need to pierce the Houslanger Firm's corporate veil, given the fact that Houslanger was personally involved in the violations.

### C. Asta, a debt collector, is vicariously liable for the acts of Palisades.

In their Opposition to Plaintiff's Motion to Amend His Complaint, Defendants argued that the proposed SAC contained no "specific allegations against Asta . . . ." But to the contrary, anyone who looks at the proposed SAC can see that Plaintiff has pled plentiful facts in support of his contention that Palisades is a mere alter-ego of Asta. Indeed, the 12(b)(6) standard only requires that McCrobie put forward sufficient facts demonstrating that it is plausible that upon further discovery, an issue of fact will exist as to whether Asta may be held liable for the actions of Palisades.[104] Thus, at this state of the litigation, Asta can be named as a defendant on a vicarious-liability theory.

---

[104] *See Twombly*, 550 U.S. 544 at 570.

Delaware law applies to the question of whether Asta can be held vicariously liable for Palisades.[105] This Court has noted that under Delaware law, the question of domination is generally one of fact.[106] Under Delaware law, among the factors to be considered in determining whether a subsidiary and parent operate as a "single economic entity" are:

> [W]hether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.[107]

A showing of fraud or wrongdoing is not necessary under an alter-ego theory, but the plaintiff must demonstrate an overall element of

---

[105] *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d. Cir. 1995) (applying Delaware law when determining if the parent of a Delaware corporation may be held vicariously liable).

[106] *Fletcher*, 68 F.3d at 1548-1549.

[107] *Fletcher*, 68 F.3d at 1458 (citing *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, No. CIV.A. 1331, 1989 WL 110537, at *4 (Del. Ch. Sept. 19, 1989) (quoting *United States v. Golden Acres, Inc.*, 702 F.Supp. 1097, 1104 (D.Del.1988))).

injustice or unfairness.[108] The overarching question is whether the parent and subsidiary "operated as a single economic entity such that it would be inequitable…to uphold a legal distinction between them."[109]

McCrobie's proposed complaint, and the exhibits annexed thereto,[110] allege the following facts:

- Defendant Palisades is a wholly owned subsidiary of Defendant Asta.[111]

- Asta has the power to direct the "significant activities" of Palisades through an ownership and service contract it holds with Palisades.[112]

- Asta's SEC disclosures confirm that it essentially controlled all aspects of the Great Seneca Portfolio purchase. First, Asta paid a $75 million deposit using its own lines of credit.[113] To finance the remaining obligation on the deal, Gary Stern signed an amended agreement with the Bank of Montreal on behalf of Palisades Acquisition XVI, LLC.[114] Additionally, as a part of that

---

[108] *Id.* (citing *Harco*, 1989 WL 110537, at *5).

[109] *Fletcher*, 68 F.3d at 1458.

[110] The court may consider not only the facts alleged in Plaintiff's complaint, but the facts contained in the exhibits annexed thereto. *See e.g.*, *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

[111] SAC, at ¶9. A. 186.

[112] SAC, at Exhibit J. A. 342 ("Palisades XVI is a variable interest entity ('VIE'). Asta Funding, Inc. is considered the primary beneficiary because it has the power to direct the significant activities of the VIE via its ownership and services contract.").

[113] SAC, at Exhibit I. A. 279.

[114] *Id.* at A. 321 ("Second Amendment to the Receivables Financing Agreement").

financing deal, Asta made "certain representations and warranties" to the Bank of Montreal to support the transaction; Asta then facilitated the ability of Palisades XVI to make an initial payment on its obligation by borrowing $13.1 million.[115]

■ Asta's SEC disclosures indicate that it controlled all aspects relating to how the alleged assets purchased in the Great Seneca Portfolio would be liquidated. Asta entered into agreements with third party servicers to assist Asta in locating debtors so that they could be sued, and It paid the obligations under these agreements.[116]

■ Asta initiated a practice of partnering with third-party collection agencies and attorneys to maximize the revenues it could receive from the assets it allegedly purchased, and Asta bore the administrative costs associated with collecting the alleged assets it had purchased.[117]

■ Asta considers itself, along with its wholly owned subsidiaries, to essentially be one company engaged in the business of purchasing, managing, and servicing distressed consumer receivables.[118]

■ On August 7, 2013 Asta fronted $15 million to the Bank of Montreal in consideration for an amended loan agreement between the BMO and Palisades, indicating that Asta was involved in every aspect of Palisades' operation.[119]

---

[115] *Id.* at A. 278.

[116] *Id.* at A. 277.

[117] *Id.* at A. 278.

[118] *Id.* at A. 300 ("Asta Funding, Inc., together with its wholly owned subsidiaries, (the "Company") is engaged in the business of purchasing, managing for its own account and servicing distressed consumer receivables..."); SAC at Exhibit J. A. 342 (same).

[119] SAC, at Exhibit J. A. 353.

- The purported bill of sale Defendants have produced in this matter is signed on behalf of Palisades by Mitchell Cohen, who indicated that he was a manager at Palisades.[120] According to Asta's SEC filings, Mitchell Cohen was also the Chief Financial Officer of Asta Funding.[121]

In short, McCrobie has more than a reasonable basis for alleging that that there is no meaningful difference between Palisades and Asta, and that Palisades was formed as an alter ego of Asta in a cynical ploy to limit Asta's liability. As such, McCrobie's proposed complaint provides sufficient allegations to justify piercing of the corporate veil, especially given that this matter is at the pleading stage.

On a related note, Defendants argued that, "the SAC does not plausibly provide content demonstrating that Asta is a debt collector as defined by 15 U.S.C. §1692a(6)." Defendants, however, overlooked paragraph eight of the proposed SAC:

> Defendant, Asta Funding, Inc. is a purchaser and collector of defaulted debts, regularly attempts to collect debts alleged to be due another, and is principally engaged in debt collection.

---

[120] SAC, at Exhibit B. A. 38-41.
[121] SAC, at Exhibit I. A. 264, 292, 330.

66

This allegation is grounded in overwhelming factual support, as evidenced by Exhibits G-J to the proposed SAC, detailing Asta's debt-collection activities. Thus, McCrobie sufficiently alleged that Asta is a "debt collector" as that term is defined in 15 U.S.C. §1692a(6).

## Conclusion

This federal FDCPA action was *not* an attempt to challenge the state-court judgment obtained by Centurion. The *only thing* that this federal case challenges is Defendants' deceptive and misleading attempts to collect upon a state-court judgment that belonged to a completely different debt collector. As explained above, Defendants' actions, as alleged in Plaintiff's proposed SAC, violated the FDCPA in numerous ways. For these reasons, Plaintiff respectfully asks this Court to reverse the judgment of the district court and to remand with instructions to permit Plaintiff to file his proposed SAC.

Dated:    New York, New York
            June 14, 2016

                       Respectfully submitted,

                       Bromberg Law Office, P.C.

                       By:   /s/ Jonathan R. Miller
                               Jonathan R. Miller

**Attorneys for Plaintiff-Appellants**

Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
(212) 248-7906

Kenneth R. Hiller
Seth J. Andrews
Timothy Hiller
Law Offices of Kenneth Hiller, PLLC
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288

## Certificate of Compliance
## With Type-Volume Limitation, Typeface Requirements
## And Type Style Requirements

1.      This brief complies with the type-volume limitation of

Fed.R.App.P. 32(a)(7)(B) because:

> This brief contains 14,000 words, excluding the
> parts of the brief exempted by Fed.R.App.P.
> 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of
Fed.R.App.P. 32(a)(5), and the type style requirements of Fed.R.App.P.
32(a)(6) because:

> This brief has been prepared in a proportionally
> spaced typeface using Microsoft Office Word
> 2010, in Century, font size 14.

Dated:   New York, New York
         June 14, 2016

                         Respectfully submitted,

                         Bromberg Law Office, P.C.
                         Attorneys for Plaintiff-Appellant

                         By: /s/ Jonathan R. Miller
                             Jonathan R. Miller

69

SPECIAL APPENDIX

## **Table of Contents**

**Page**

Order of the Honorable John T. Curtin,
  dated March 24, 2016 ..................................................... SPA1

Judgment of the United States District Court, Western
  District of New York, entered March 28, 2016,
  Appealed From ............................................................... SPA16

SPA1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER McCROBIE,

                                        Plaintiff,

                    -vs-                                        15-CV-18-JTC

PALISADES ACQUISITION XVI, LLC,
HOUSLANGER & ASSOCIATES, PLLC,
and TODD HOUSLANGER,

                                        Defendants.
_____

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (TIMOTHY HILLER, ESQ., of
               Counsel), Amherst, New York, for Plaintiff

               WARSHAW BURSTEIN, LLP (SCOTT E. WORTMAN, ESQ., of
               Counsel), New York, New York, for Defendants.


        On January 6, 2015, plaintiff Christopher McCrobie filed this action seeking

damages against defendants Palisades Acquisition XVI, LLC ("Palisades") and Houslanger

& Associates, PLLC ("Houslanger & Associates"), based on alleged violations of the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a, *et seq*. (Dkt. #1).  On May

19, 2015, prior to service of a responsive pleading and without leave of court, plaintiff filed

an "amended" complaint adding Todd Houslanger, attorney for Palisades and Houslanger

& Associates, as a defendant, as well as adding a cause of action for violation of New York

General Business Law ("NYGBL") § 349, and several factual allegations pertaining to

events occurring after the date of the original pleading (First Amended Complaint, Dkt. #

7).

In lieu of an answer, defendants moved pursuant to Rule 12 of the Federal Rules of Civil Procedure to dismiss the action for failure to state a plausible claim for relief under the FDCPA or GBL, and for lack of subject matter jurisdiction (Dkt. #17), and the court entered an order setting a briefing schedule for response and reply (Dkt. #18).  Instead of responding to the motion to dismiss, plaintiff filed a motion (Dkt. # 19) pursuant to Fed. R. Civ. P. 15(a) for leave to file a second amended complaint, styled as a "consumer class action brought on behalf of consumers subjected to" defendants' alleged violations of the FDCPA and GBL (Proposed Second Amended Complaint, Dkt. #19-3, p.1), and seeking to add Palisades' corporate parent, Asta Funding, Inc., as an additional defendant, as well as claims for declaratory and injunctive relief and punitive damages.  The court amended the scheduling order to provide the opportunity for further briefing to fully address the issues raised by the motions (Dkt. #23), and briefing is now complete (*see* Dkt. ##25, 28).[1]

For the reasons that follow, defendants' motion to dismiss is granted, and plaintiff's motion for leave to file a second amended complaint is denied.

## BACKGROUND

The pertinent facts, as alleged in the First Amended Complaint (the operative pleading at issue here, *see In re AIG Advisor Grp. Sec. Litig.*, 309 F. App'x 495, 497 n. 1

---

[1]Briefing was completed on October 14, 2015, upon receipt of plaintiff's "Reply In Further Support of Plaintiff's First Motion To Amend His Complaint" (Dkt. #28), which the court accepted as timely filed by order entered October 19, 2015 (Dkt. #30, granting plaintiff's motion for extension of time).  Defendants immediately moved for reconsideration of the order granting an extension, and the court promptly held a status conference at which counsel agreed to hold the motions in abeyance pending the outcome of mediation, in accordance with the court's established procedures for alternative dispute resolution (*see* Dkt. ##32, 33).  Upon entry of certification of completion of mediation without settlement, the parties were advised during a further status conference on February 2, 2016, that the motions would be taken under advisement by the court without further briefing or oral argument (Dkt. #37).

(2d Cir. 2009)) and taken as true for the purposes of determining the issues raised by the pending motions,[2] are as follows:

On August 11, 2006, a small claims collection action was filed against Mr. McCrobie in Buffalo City Court by Centurion Capital Corporation ("Centurion"), as assignee of Providian Financial (the original creditor), seeking judgment on a defaulted credit card debt in the amount of $780.12, with interest (Dkt. #7, ¶ 16; *see also* Dkt. #25-2, pp. 11, 12 (Summons and Complaint, Index No. G07295/06)).[3]   The summons and complaint in the City Court action were served on October 20, 2006, "by substitute service (posting and mailing)" at 1201 Hertel Avenue in Buffalo, "an old address of [Mr. McCrobie]'s" (Dkt. #7, ¶ 17; *see also* Dkt. #25-2, p. 14 (Affidavit of Service, Index No. G07295/06)).   Mr. McCrobie did not answer or otherwise respond to the complaint in the City Court small claims action, and default judgment in favor of Centurion was obtained against Mr. McCrobie on or about

---

[2]The court notes that the original complaint in this action consisted of just over three pages, with thirteen paragraphs of factual allegations.  The First Amended Complaint now consists of over fourteen pages, including a four-page introductory narrative regarding plaintiff's views on the "staggering number of default judgments … issued against New York residents in recent years as a result of suits brought by debt buyers and debt collectors" in small claims courts (*see* Dkt. #7, p. 3).  The factual allegations in the First Amended Complaint have been expanded to twenty-five paragraphs, including a narrative of email discussions and document exchange between opposing counsel (with copies of the emails and documents attached as exhibits) which took place during March, April and May 2015 – long after the filing of the original complaint (*see* Dkt. # 7, ¶¶ 23-29).  As reflected in the discussion herein, the court has reached its determination of the issues raised by the parties' respective motions without considering the statements of fact or other representations of factual material contained in these narratives and exhibits unless otherwise specifically noted, and notwithstanding the pleading transgressions embodied in the First Amended Complaint (see Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); Fed. R. Civ. P. 15(d) (requiring leave of court "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

[3]In ruling on a motion to dismiss, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks and citation omitted).  Courts also may consider "matters of which  judicial notice may be taken" and "documents either in plaintiff['s] possession or of which plaintiff [ ] had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Jones v. Rivera*, 2015 WL 8362766, at *2 (S.D.N.Y. Dec. 7, 2015).

March 8, 2007, in the amount of $982.12 (Dkt. #7, ¶ 18; *see also* Dkt. #25-2, p. 9

(Affirmation of Regularity and Default Judgment, Index No. G07295/06)).  More than seven

and a half years later, on or about October 7, 2014, Houslanger & Associates forwarded

an Income Execution to Mr. McCrobie's place of employment directing satisfaction of the

judgment pursuant to the garnishment procedures of Section 5231 of the New York Civil

Practice Law and Rules ("N.Y.C.P.L.R."), and advising that Palisades–as assignee to the

judgment obtained in favor of Centurion–was the current creditor on the debt (Dkt. #7, ¶ 21;

*see also* Dkt. #19-8, pp. 1-3).

　　　　As plaintiff in this action, Mr. McCrobie alleges that prior to service of the Income

Execution on October 7, 2014, he was not aware that a default judgment was obtained

against him in the City Court small claims action in March 2007, nor was he aware of any

assignment of the judgment to Palisades for collection (Dkt. #7, ¶¶ 19, 22-23).  Plaintiff

claims that defendants' attempt to collect the judgment on behalf of Palisades without proof

of a valid assignment constitutes false, deceptive, or misleading representation or means

in connection with the collection of a  debt in violation of several provisions of the FDCPA

and NYGBL § 349, causing plaintiff to suffer economic and emotional harm (Dkt. #7, ¶¶ 38-

44).

　　　　Defendants move to dismiss the complaint on the following grounds:

1.　　Plaintiff's FDCPA claims are time barred by operation of the one-year statute of

　　　　limitations if 15 U.S.C. § 1692k(d).

2.　　The question whether the assignment of the judgment was valid under state law

　　　　does not provide a basis for relief under the FDCPA.

**SPA5**

3.   The *Rooker–Feldman* doctrine prohibits this court from exercising subject matter jurisdiction over plaintiff's claims for relief under federal law for injury caused by a state court judgment.

4.   Under the standard of *Colorado River Water Conservation District v. United States*, the court should abstain from exercising jurisdiction over plaintiff's claims out of deference to the parallel litigation in state court.

5.   There is no basis for the individual capacity claims against Todd Houslander.

6.   Plaintiff has failed to plead facts sufficient to sustain a claim for violation of any of the specific FDCPA provisions cited in the complaint.

6.   In the absence of a viable federal claim, the court should decline to exercise supplemental jurisdiction over plaintiff's state law claim.

As indicated, in response to the motion to dismiss, plaintiff moved for leave to file a Second Amended Complaint seeking to once again significantly expand the scope of the litigation[4] by asserting a class action on behalf of all consumers with addresses in the State of New York who have had their wages garnished or had money taken from their bank accounts pursuant to post-judgment remedies initiated and enforced against them by defendants (*see* Dkt. #19-3, ¶¶ 76, 89); adding Palisades' corporate parent as an additional defendant; and adding claims for declaratory and injunctive relief and punitive damages.

---

[4]Considering sheer volume alone, the Proposed Second Amended Complaint consists of 38 pages and 100 numbered paragraphs, including 58 separate "Factual Allegations" replete with legal argument, case law citations, and references to unrelated reported cases involving claims brought and defended by the same attorneys involved in the present action.

For the reasons that follow, defendants' motion to dismiss is granted, and plaintiff's

motion for leave to amend is denied as futile.

## DISCUSSION

### I.      Motion to Dismiss

As indicated, defendants seek dismissal of the complaint pursuant to Rule 12(b)(6)

for failure to state a claim upon which relief can be granted, and in the alternative, pursuant

to Rule 12(b)(1) for lack of subject matter jurisdiction.[5]  In reviewing a motion to dismiss

under Rule 12(b)(6), the court must accept the factual allegations set forth in the complaint

as true, and must draw all reasonable inferences in favor of the plaintiff.  *See Cleveland*

*v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*,

421 F.3d 96, 100 (2d Cir. 2005).  In order to survive the motion to dismiss, the complaint

must allege "a plausible set of facts sufficient 'to raise a right to relief above the speculative

level.' "  *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595

F.3d 86, 91 (2d Cir.  2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007));

*Hunter v. Capital Management Services, LP*, 2013 WL 6795630, at *2 (W.D.N.Y. Dec. 19,

2013).  This standard does not require "heightened fact pleading of specifics, but only

---

[5]Ordinarily, when a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined."  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quoting 5 C. Wright and A. Miller, Federal Practice and Procedure, § 1350, p. 548 (1969)).  The courts have also recognized that, "[a]s there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court."  *Gibbs v. Buck*, 307 U.S. 66, 71–72 (1939), *cited in Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006) (noting that Second Circuit has considered challenges to subject matter jurisdiction under both Rules 12(b)(1) and 12(b)(6), but that 12(b)(1) is the more appropriate rule).  Here, since defendants opened the volley with the argument that plaintiff's FDCPA claims should be dismissed as untimely pursuant to Rule 12(b)(6), the court finds it appropriate to address this primary argument for dismissal as an initial matter.

enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,  678 (2009) (citing *Twombly*, 550 U.S. at 556).

Defendants primary argument for Rule 12(b)(6) dismissal is that plaintiff's FDCPA claims are untimely under 15 U.S.C. § 1692k(d), which requires that an action to enforce "any liability created by" the statute must be brought "within one year from the date on which the violation occurs."[6]  *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) (motion to dismiss an action as barred by statute of limitations "is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted"); *see also DeJesus v. BAC Home Loans Servicing, LP*, 2014 WL 4804999, at * 4 (E.D.N.Y. Sept. 26, 2014).  Defendants maintain that even if the factual allegations in the First Amended Complaint are accepted as true and all reasonable inferences are drawn in favor of plaintiff, plaintiff's cause of action for violation of the FDCPA would have accrued, at the latest, on March 8, 2007, when the default judgment was obtained in Buffalo City Court, and therefore, this action–filed more than seven years later on January 6, 2015–is untimely.  Plaintiff contends that his FDCPA cause of action accrued on August 28, 2014, the date on which an employee of defendant Houslanger & Associates signed

---

[6]Section 1692k(d) specifically provides:

(d) Jurisdiction

An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

15 U.S.C. § 1692k(d).

the Income Execution (*see* Dkt. ##19-8), or later on or about October 7, 2014, when plaintiff claims to have been made aware of the "violation" upon service of the Income Execution at his place of employment (*Id.* at ¶¶ 21-23).

Courts within the Second Circuit that have considered the issue have regularly held that in determining the date on which the "violation" occurs for purposes of accrual of a cause of action under the FDCPA, "there is no question that the latest date upon which the one year period begins to run is the date when a plaintiff receives an allegedly unlawful communication."  *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 158 (E.D.N.Y. 2007) (citing *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 868 n. 2 (2d Cir. 1992)).  An "unlawful communication" includes either (1) a debt collection letter/notice, or (2) service of a summons and complaint by a debt collector.  *See, e.g., Ellis v. Gen. Revenue Corp.*, 274 F.R.D. 53, 57 (D.Conn. 2011) (listing cases); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 126 (2d Cir. 2002) (noting that the statute of limitations for FDCPA violations begins to run either upon serving a summons and complaint or the mailing of a debt collection notice).

In this case, accepting as true the operative factual allegations and drawing all reasonable inferences in plaintiff's favor, plaintiff has at least plausibly alleged sufficient facts to provide a basis for finding that the FDCPA "violation" occurred, and the one-year period began to run, as of August 28, 2014, the date on which an employee of defendant Houslanger & Associates signed the allegedly invalid N.Y.C.P.L.R. § 5231 Income Execution (*see* Dkt. #19-8, p. 1; Dkt. #28, p. 4), or later on or about October 7, 2014, when plaintiff claims to have been made aware of the "violation" upon service of the Income

Execution at his place of employment (Dkt. #7, ¶¶ 21-23).  Since both of these dates fall within the limitations period of section 1692k(d), the court declines the invitation to dismiss plaintiff's FDCPA cause of action as untimely.

This finding is not to suggest, however, that plaintiff's cause of action for violation of the FDCPA has nothing to do with the circumstances of the default judgment obtained in the state court debt collection action.  Rather, the very basis for plaintiff's claim in federal court is the central allegation that defendants pursued state law post-judgment remedies to enforce the default judgment without authorization to do so–an argument directly and undeniably tied to the validity of the state court judgment itself.   In recognition of this posture, defendants seek dismissal of the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) based on application of the *Rooker-Feldman* doctrine, which arises from two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The *Rooker-Feldman* doctrine stands for the proposition that "lower federal courts possess no power whatever to sit in direct review of state court decisions."  *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970); *accord Hoblock v. Albany Cty. Bd. of Elecs.*, 422 F.3d 77, 84 (2d Cir. 2005) ("[F]ederal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.").   "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court determinations."   *Park v. City of N.Y.*, 2003 WL 133232, at *7 (S.D.N.Y. Jan.16, 2003) (quoting *Feldman*, 460 U.S. at 482–84 n.

-9-

16); *Craig v. Saxon Mortgage Servs., Inc.*, 2015 WL 171234, at *5 (E.D.N.Y. Jan. 13, 2015).

In *Hoblock,* upon rigorous re-examination of the *Rooker–Feldman* doctrine in light of the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Second Circuit noted that *Exxon Mobil* had confined the scope of the *Rooker–Feldman* doctrine "to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284, *quoted in Hoblock*, 422 F.3d at 85.   The Second Circuit delineated four requirements for the application of *Rooker–Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock*, 422 F.3d at 85 (internal citations and quotation marks omitted); *see also McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010); *Done v. Option One Mortgage*, 2011 WL 1260820, at *5 (E.D.N.Y. Mar. 30, 2011).  As discussed below, all four of these requirements are satisfied in this case.

First of all, as reflected above, plaintiff had lost the state court collection action, and judgment had been entered against him, long before he commenced his action in this court.  The jurisdictional facts presented by way of the parties submissions further reflect

-10-

Case 1:15-cv-00018-JTC   Document 41   Filed 03/25/16   Page 11 of 15

that on August 27, 2015[7] (nearly 8½ years after entry of the default judgment, and 8 months after filing the complaint in this court), Mr. McCrobie filed a motion in Buffalo City Court to vacate the underlying default judgment, which was granted by the city court judge in a Memorandum and Order dated February 2, 2016 (Dkt. #38-1); and that Palisades (as assignee of Centurion) has indicated its intention to file a motion for reargument in City Court (*see* Dkt. #39).  Thus, despite many years of inactivity, and regardless of the grounds asserted by the parties or relied upon by the city court judge, the issues pertaining to the validity of the default judgment and its execution pursuant to the provisional remedies provided by state law are presently being litigated in state court.  Nonetheless, there can be no dispute that for purposes of application of the *Rooker-Feldman* doctrine, the federal court plaintiff lost in state court, and the state court judgment forming the basis for the federal court complaint was rendered long before this action was commenced.  *See, e.g., Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 347-48 (E.D.N.Y. 2010) (citing numerous cases in which courts have applied *Rooker–Feldman* where federal action seeks review of previous state court judgment, regardless of whether litigants have also sought state court review of the judgment).

Nor can it reasonably be disputed that by filing the federal court action, plaintiff seeks damages for injuries caused not only as a direct result of defendants' allegedly deceptive conduct in enforcing the state court judgment, but also–by logical extension–as a direct result of the judgment itself.  Indeed, the foundation for plaintiff's entire case is that

---

[7]It is noted that August 27, 2015 is also the date on which plaintiff filed his motion in this action seeking leave to file a Second Amended Complaint, one day prior to the deadline for responding to defendants' motion to dismiss.

-11-

the Income Execution issued on behalf of Palisades pursuant to N.Y.C.P.L.R. § 5231 is invalid absent proof that Centurion properly assigned the right to enforce the state court judgment to Palisades. As indicated, the issues regarding the validity of the underlying judgment, the subsequent assignment, and the garnishment order–all dependent for resolution on state law–are currently pending before the state court by virtue of the February 2, 2016 order vacating the default judgment.

Likewise, there can be no question that by bringing this action challenging the lawfulness of defendants' conduct under federal law, plaintiff is requesting this court to review not only the legality of defendants' initiation of state law post-judgment remedies to enforce a state court default judgment on behalf of the purported assignee-creditor, but also the facts and circumstances of the state court's entry of the judgment and the validity of the purported assignment of the right to its enforcement. Viewed in this light, the complaint necessarily raises questions as to the integrity of the underlying judgment which are central to the merits of, and "inextricably intertwined" with, the state court's determination of the issues pending before it, and this court cannot envision a scenario in which it could grant the relief sought by plaintiff in federal court without the risk of a ruling inconsistent with the relief granted in state court. This is precisely what the *Rooker–Feldman* doctrine forbids.

Based upon this assessment, and taking the well-pleaded allegations in the complaint as true and giving plaintiff the benefit of all reasonable inferences to be drawn from those allegations, the court finds that plaintiff's federal claims in this action are inextricably intertwined with the state court's determinations involving the default judgment entered in Buffalo City Court in March 2007, precluding this court's exercise of subject

SPA13

matter jurisdiction by application of the *Rooker-Feldman* doctrine.  The court therefore grants defendants' motion pursuant to Rule 12(b)(1) dismissing plaintiff's FDCPA claims for lack of subject matter jurisdiction.

Plaintiff also claims that defendants' conduct–*i.e.*, enforcement of post-judgment remedies without proper proof of the right to do so–violates NYGBL § 349, invoking the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  However, under section 1367(c)(3), the court may decline to exercise supplemental jurisdiction over a state law claim when the court has "dismissed all claims over which it has original jurisdiction."  In this regard, the Second Circuit has instructed that when the district court determines that it lacks subject matter jurisdiction over the federal claims, "[i]t would … be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction.  *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

Accordingly, the court declines to exercise supplemental jurisdiction over plaintiff's claim brought pursuant to NYGBL § 349.

## II.    Motion for Leave To Amend

Plaintiff seeks leave pursuant to Fed. R. Civ. P. 15(a) to amend the pleadings by, among other things, asserting a class action on behalf of New York consumers subjected to defendants' alleged violations of the FDCPA and GBL.  As explained by the Second Circuit, although Rule 15(a) directs the court to grant leave to amend "freely … when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), "it is within the sound discretion of the district

-13-

court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

> A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.  If the amendment proposed by the moving party is futile, it is not an abuse of discretion to deny leave to amend. An amendment is futile if the proposed amended pleading would be subject to immediate dismissal for failure to state a claim or on some other ground.  The party opposing a motion to amend bears the burden of establishing that an amendment would be futile.

*Lumetrics, Inc. v. Bristol Instruments, Inc.*, 101 F. Supp. 3d 264, 268 (W.D.N.Y. 2015) (internal quotation marks, citations, and alterations omitted).

As reflected in the discussion above, the burden has been met in this case.  The causes of action in the proposed Second Amended Complaint, although significantly expanded by class allegations, are based upon the same course of conduct alleged as grounds for the FDCPA and GBL claims asserted in the operative First Amended Complaint, and would therefore be subject to immediate dismissal for lack of subject matter jurisdiction and lack of a basis for the exercise of supplemental jurisdiction.

Accordingly, plaintiff's motion for leave to file a Second Amended Complaint is denied as futile.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the complaint (Dkt. #17) is granted, and plaintiff's motion for leave to amend (Dkt. #19) is denied.

The Clerk of the Court is directed to enter judgment in favor of defendants.

# SPA15

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated: March 24, 2016
p:\pending\2015\15-18.mar18.2016

SPA16

Judgment in a Civil Case

United States District Court
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER MCCROBIE          **JUDGMENT IN A CIVIL CASE**
                                                       CASE NUMBER: 15-CV-18C

      v.

PALISADES ACQUISITION XVI, LLC, et al.,

☐ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**.  This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED:  that the defendants' motion to dismiss the

complaint is Granted and that plaintiff's motion for leave to amend is Denied.

Date: March 28, 2016                        MARY C. LOEWENGUTH
                                                             CLERK OF COURT

                                                             By: s/Suzanne Grunzweig
                                                                 Deputy Clerk