# 16-1264-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

≫ ≪

CHRISTOPHER MCCROBIE,

*Plaintiff-Appellant,*

*v.*

PALISADES ACQUISITION XVI, LLC, HOUSLANGER & ASSOCIATES, PLLC,
TODD E. HOUSLANGER,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court
for the Western District of New York (Buffalo)*

## AMENDED REPLY BRIEF FOR PLAINTIFF-APPELLANT

Brian L. Bromberg
Jonathan R. Miller
BROMBERG LAW OFFICE, P.C.
26 Broadway, 21st Floor
New York, New York 10004
212-248-7906

*and*

Kenneth R. Hiller
Seth J. Andrews
Timothy Hiller
LAW OFFICES OF
KENNETH HILLER PLLC
6000 North Bailey Avenue, Suite 1A
Amherst, New York 14226
716-564-3288

*Attorneys for Plaintiff-Appellant*

# Table of Contents

Table of Authorities..................................................................ii

Argument.............................................................................1

   I.   Plaintiff never "abandoned" any of his FDCPA claims against Defendants..........................................................................1

   II.  Plaintiff is not asking a federal court to vacate a state-court judgment.........................................................................10

   III.   Defendants' briefs do not accept Plaintiff's well-pleaded allegations as true....................................................................19

   IV.   Defendants' other arguments are without merit........................22

Conclusion .........................................................................24

Certificate of Compliance ......................................................26

## Table of Authorities

**Page(s)**

Cases

*Berman v. Parco,*
986 F. Supp. 195 (S.D.N.Y. 1997) .......................................................... 24

*Coble v. Cohen & Slamowitz, LLP,*
No. 11 Civ. 1037(ER)(GAY), 2013 WL 1500418 ........................... 15, 16

*Commer v. McEntee,*
No. 00 Civ. 7913(RWS), 2006 WL 3262494 (S.D.N.Y. Nov.
9, 2006) ...................................................................................................... 24

*Diaz v. Paterson,*
47 F.3d 88 (2d Cir. 2008) ......................................................................... 2

*Dietz v. Bouldin,*
136 S. Ct. 1885 (2016) .......................................................................... 5, 6

*Gomes v. ANGOP,*
541 Fed. Appx. 141 (2d Cir. 2013) ......................................................... 9

*Greco v. Trauner, Cohen & Thomas, L.L.P.,*
412 F.3d 360 (2d Cir. 2005) .................................................................. 22

*Harold v. Steel,*
773 F.3d 884 (7th Cir. 2014) ................................................................. 19

*International Bus. Mach. Corp. v. Edelstein,*
526 F.2d 37 (2d Cir. 1975) ...................................................................... 9

*Keepers, Inc. v. City of Milford,*
807 F.3d 24 (2d Cir. 2015) ...................................................................... 9

*Landis v. North American Co.,*
299 U.S. 248 (1936) (Cardozo, J.) .......................................................... 5

*Lewis v. Frayne,*
595 Fed. Appx. 35 (2d. Cir. 2014) .......................................................... 9

*Luellen v. Hodge*,
2013 WL 5490166 (W.D.N.Y. Sept. 30, 2013) .................................... 24

*MacAlister v. Guterma*,
263 F.2d 65 (2d Cir. 1958) ..................................................................... 5

*Marcone Wireless Telegraph Co. of America v. United States*,
320 U.S. 1 (1943) ................................................................................... 6

*Morris v. American Home Mortg. Servicing, Inc.*,
443 Fed. Appx. 22 (5th Cir. 2011) ....................................................... 18

*Nechis v. Oxford Health Plans, Inc.*,
421 F.3d 96 (2d Cir. 2005) .................................................................... 21

*Sloan v. United Tech. Corp.*,
596 Fed. Appx. 35 (2d Cir. 2015) ........................................................... 9

*Smith v. 131 E. Ames Inc.*,
No. 14-CV-5060 (SJF)(SIL), 2015 WL 1565491 (E.D.N.Y.
Apr. 8, 2015) ........................................................................................ 16

*Swiatkowski v. Citibank*,
446 Fed. Appx. 360 (2d Cir. 2011) ...................................................... 17

*United States v. Joyner*,
313 F.3d 40 (2d Cir. 2002) ..................................................................... 2

**Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ......... *passim*

**Other Authorities**

C.P.L.R. 5019(c) ................................................................... 20, 21, 22

Fed. R. App. P. 10(c) ..................................................................... 8

Fed. R. App. P. 10(e) (1) ............................................................... 8

Fed. R. App. P. 30(b)(1) ................................................................ 8

Local Rule 30.1(g) ........................................................................ 8

## Argument

### I. Plaintiff never "abandoned" any of his FDCPA claims against Defendants.

Defendants devote most of their briefs to extended hand-wringing over a bizarre procedural issue – something so petty and so peripheral that the court below did not even bother to address it in its decision. Specifically, Defendants argue that, because Plaintiff never filed a document styled as an "Opposition" to their Motion to Dismiss, Plaintiff has "abandoned" any and all of his claims.[1] It is an ultra-formalistic argument to say the least, since Plaintiff, in fact, fully addressed *all* of Defendants' arguments concerning why his claims ought to have been dismissed.[2] That said, Plaintiff readily concedes that these counterarguments were contained in his briefing in support of his cross-motion to amend his Complaint, rather than in a document with the words "Opposition to Defendants' Motion to Dismiss" at the top.

To be clear: Defendants are *not* arguing that Plaintiff's Appellant Brief before *this Court* raises brand new legal theories not raised in

---

[1] *See* Brief of Appellee Palisades Acquisition XVI, LLC ("Palisades"), ECF#42, at 22-26.

[2] *See* papers filed in support of Plaintiff's Motion to Amend, A. 146-388 & A. 645-61.

1

briefing before the *district court*. Nor are Defendants arguing that

Plaintiff has failed to include arguments previously raised below in his

Appellant Brief here. In other words, Defendants are not using

"abandonment" in the usual senses of that word.[3] No, Defendants

literally are arguing that the district court ought to have rejected

Plaintiff's arguments out of hand because the document in which those

arguments appeared was named *x* instead of *y*. Not only that, but

Defendants are arguing that the district court committed *appealable*

*error* by proceeding to the merits rather than basing its decision on

Defendants' own idiosyncratic brand of procedural nitpicking. Finally,

Defendants make these arguments *without* stopping to consider what

this Court's standard of review might be, and *without* articulating how

they were prejudiced by Plaintiff's purported procedural infraction.

 Despite all of Defendants' hand-wringing, the bottom line is this:

Defendants filed a Motion to Dismiss; Defendants had their say;

---

[3] *See, e.g.*, *Diaz v. Paterson*, 47 F.3d 88, 94-95 (2d Cir. 2008) (refusing to consider an issue raised for the first time on appeal); *United States v. Joyner*, 313 F.3d 40, 44 (2d Cir. 2002) ("It is well established that an argument not raised on appeal is deemed abandoned and lost, and that a court of appeals will not consider the argument unless it has reason to believe that manifest injustice would result otherwise.") (internal quotation marks and citations omitted).

Plaintiff had his say; and the district court's decision dismissed Plaintiff's complaint on the merits. Plaintiff did not hold back any arguments, alternative legal theories, or evidence, either before the district court or in his opening brief before this Court. In short, Defendants' abandonment argument does not fit the circumstances of this case. Defendants are urging this Court to hold that, even though Plaintiffs fully addressed all of Defendants' arguments in support of dismissal, and even though the district court in its discretion granted Plaintiff permission to present those arguments in a cross-motion rather than in an opposition to Defendants' motion, Plaintiff should be deemed to have abandoned all of his claims because he did not file a document called an "Opposition." What Defendants are urging is hyper-literalism bordering on fundamentalism – and there is no precedent for such a hyper-literal abandonment doctrine, whether cited by Defendants or otherwise.

Plaintiff never took any action signaling an intention to give up on any of his FDCPA claims against Defendants – indeed, Plaintiff's proposed Second Amended Complaint ("SAC") included all of the FDCPA claims included in the First Amended Complaint, and

Plaintiff's briefing in support of his proposed SAC countered each of Defendants' arguments in support of dismissal. Thus, this is not a matter of Plaintiff "abandoning" any of his FDCPA claims against Defendants; rather, it is a matter of the district court exercising its inherent power to manage its own docket: After Defendants had filed their Motion to Dismiss, and after Plaintiff had filed his cross-Motion to Amend his Complaint, counsel for Plaintiff called the district court chambers to ask whether the district court preferred that Plaintiff also file an Opposition to the Motion to Dismiss.[4] Plaintiff's counsel was told not to file an Opposition.[5] In its discretion, the district court chose to consider all of the arguments raised in the briefing surrounding the Motion to Amend when deciding the Motion to Dismiss and vice versa – as evidenced not only by the district court's recounting of the procedural disposition,[6] but by the fact that the district court based its decision on the merits rather than on Defendants' procedural nitpicking.[7] Indeed, despite Defendants' repeated attempts to cram this minor procedural

---

[4] *See* Declaration of Kenneth R. Hiller, A. 663-64.

[5] *See Id.*

[6] A. 702

[7] A. 706-14.

4

issue down the district court's throat,[8] the district court evidently

concluded that the issue was so minor that it did not bear mentioning.

Every court enjoys the inherent power to "control the disposition

of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants. How this can best be done calls for the

exercise of judgment, which must weigh competing interests and

maintain an even balance."[9] This Court has recognized district courts'

inherent power to manage their own dockets, holding, for example, that

the court enjoys the inherent power to consolidate similar cases and

appoint general counsel.[10] And the Supreme Court has recognized it by

holding that a district court has the inherent authority to stay a

pending case,[11] to dismiss a case *sua sponte* for failure to prosecute,[12] to

stay disbursement of funds,[13] to recall a discharged jury,[14] and,

---

[8] *See, e.g.*, A. 389, A. 679 (insisting that Defendant's Motion to Dismiss was "unopposed").

[9] *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) (Cardozo, J.).

[10] *See MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958).

[11] *See Id.*

[12] *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (citing to *Link v. Wabash R. Co.*, 270 U.S. 626, 631-32 (1962)).

[13] *See Dietz*, 136 S. Ct. at 1893 (citing to *United States v. Morgan*, 307 U.S. 183, 197-98 (1939)).

generally, "to modify or rescind its orders at any point prior to final judgment in a civil case."[15]

Here, the district court ordered Plaintiff to file an Opposition to Defendants' Motion to Dismiss – but changed its mind after Plaintiff decided to file a cross-Motion to Amend. This is evidenced not only by the sworn declaration of Kenneth Hiller that appears in the record on appeal,[16] but in the opinion and order appealed from, which stated: "Upon entry of certification of completion of mediation without settlement, the parties were advised during a further status conference on February 2, 2016, that the motions would be taken under advisement by the court *without further briefing or oral argument* (Dkt. #37)."[17] In other words, the district court chose not to clutter the docket further with additional, redundant briefing, since the arguments made in connection with the motion to amend were equally applicable to the motion to dismiss. Defendants complain that the district court had no right to manage its docket in this manner. Defendants also hint that

---

[14] *See Dietz*, 136 S. Ct. at 1893.

[15] *See Dietz*, 136 S. Ct. at 1892 (citing to *Marcone Wireless Telegraph Co. of America v. United States*, 320 U.S. 1, 47-48 (1943).

[16] *See* Declaration of Kenneth R. Hiller, A. 663-64.

[17] A. 702, n. 1 (emphasis added).

the district court had no right to allow Plaintiff to file a reply brief one day late.[18] But if courts enjoy the inherent power to take the substantial steps listed in the previous paragraph, then surely they also enjoy the inherent power to set and alter briefing schedules, as the district court did here.

Ironically, Defendants – in their zeal to hold Plaintiff to a minor procedural rule of their own devising – ignore an important procedural rule firmly established in this Court's precedents. Specifically, in an attempt to bolster their abandonment argument, Defendants attempt to slip into their briefing a factual assertion that lacks any support in the record on appeal: "Subsequently, the District Court held a telephone conference, during which Judge Curtin's law clerk acknowledged receiving a call from Mr. Hiller, but denied ever implying or instructing Mr. Hiller not to file opposition papers. The Court agreed that the *ex parte* conversation would not be afforded any weight."[19] But Defendants can point to no portion of the Joint Appendix that supports this assertion.

---

[18] *See* Brief of Appellee Palisades, ECF#42, at 22.
[19] *See Id.* at 21.

7

The Joint Appendix does not contain a transcript of the telephone conference in question, because no transcript was made of this or any other proceedings below.[20] Of course, Fed. R. App. P. 10(c) provides for a method of making untranscribed proceedings part of the record on appeal. But here, neither Plaintiff nor any of the Defendants have chosen to use Fed. R. App. P. 10(c). If Defendants believed that it was necessary for a statement of the untranscribed proceedings to be included in the record on appeal, their opportunity to ensure that such a statement appeared was included was during the negotiations over the Joint Appendix.[21] And if, during those negotiations, disagreements emerged over exactly what happened during the untranscribed telephone conferences, the Defendants could have asked the district court to settle those disagreements.[22] Failing all of that, Defendants' absolute last opportunity to add to the record on appeal would have been in the form of a supplemental appendix filed concurrently with their briefs.[23] But Defendants took none of those steps – and absent

---

[20] Form D, ECF#8.
[21] Fed. R. App. P. 30(b)(1).
[22] Fed. R. App. P. 10(e) (1).
[23] Local Rule 30.1(g).

those steps, this Court has no way of choosing between competing accounts of what happened during untranscribed telephone conferences.

Time and again, this Court has held that it "ordinarily do[es] not consider material not included in the record on appeal . . . ."[24] And, here, Defendants have not articulated any "extraordinary circumstances" that would warrant an exception to that general rule.[25]

As it is, then, there are only two portions of the record on appeal that touch on whether Plaintiff "abandoned" his FDCPA claims against Defendants: Mr. Hiller's sworn declaration stating that he was informed that no Opposition was necessary,[26] and district court's decision. Both indicate that Plaintiff opposed Defendants' Motion to Dismiss to the district court's satisfaction. And, in any case, Defendants cannot point

---

[24] *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 29 n. 14 (2d Cir. 2015) (quoting *Loria v. Gorman*, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002)) (internal quotation marks omitted). *See also, e.g.*, *Sloan v. United Tech. Corp.*, 596 Fed. Appx. 35, 36 n.2 (2d Cir. 2015) (not for publication) (same); *Lewis v. Frayne*, 595 Fed. Appx. 35, 37 n.1 (2d. Cir. 2014) (not for publication) (same); *Gomes v. ANGOP*, 541 Fed. Appx. 141, 141 (2d Cir. 2013) (not for publication) (same).

[25] *See International Bus. Mach. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975) ("[A]bsent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record.").

[26] *See* Declaration of Kenneth R. Hiller, A. 663-64.

to any prejudice they suffered from the district court's choice to consider Plaintiff's arguments. For these reasons, Plaintiff respectfully asks this Court to do what the district court did: to ignore Defendants' hyper-technical procedural hand-wringing, and to decide this case on the merits.

## II.   Plaintiff is not asking a federal court to vacate a state-court judgment.

In addressing the *Rooker-Feldman* issue, Defendants' main strategy is to assert over, and over, and over, in conclusory fashion, that Plaintiff is "attacking" the state-court judgment by asking a federal court to vacate it. But neither of Defendants' briefs analyze the actual allegations in Plaintiff's FAC or proposed SAC and explain *why* this is the case. In other words, instead of arguing why the Court should adopt their conclusion, Defendants have resorted to repeatedly asserting their conclusion in hopes that it will stick.

In contrast, Plaintiff's opening brief before this Court thoroughly explained why the *Rooker-Feldman* doctrine is inapplicable here and, for the most part, Plaintiff relies on his opening brief. But the main points of Plaintiff's argument bear repeating:

- The Buffalo City Court judgment was obtained by a company called Centurion Capital Corporation, which is not a party to this action, in 2008.

- Plaintiff is not alleging that Centurion Capital Corporation violated the FDCPA.

- Plaintiff is not alleging that any FDCPA violations happened in 2008 or before.

- Plaintiff is not alleging that any FDCPA violations caused the judgment to be entered.

- Plaintiff does not allege that any FDCPA violation happened until 2014, when Defendants lied about their legal authority to execute upon the Centurion judgment.

- This federal FDCPA action challenges the 2014 lie that Defendants told about the judgment, not the 2008 judgment.

- A win for Plaintiff in this federal action would in no way disturb or displace the state-court judgment. Even if the district court holds that Defendants in fact lied about their authority to enforce the judgment, *the judgment would still exist*, and the rightful judgment creditor would still have the right to collect upon it. (The fact that the judgment was ultimately vacated and the case dismissed is irrelevant.)

- Defendants' 2014 lie about their authority to execute upon the 2008 judgment did not *cause* the 2008 judgment to be entered. The 2008 judgment *preexisted* the 2014 lie about the judgment. Thus, it makes no sense to say that the

11

Plaintiff's attack upon the 2014 lie is also an attack against the 2008 judgment.

- The *Rooker-Feldman* doctrine prevents state-court losers from asking federal courts to reverse state-court judgments. But the doctrine *does not* prevent federal courts from hearing cases involving lies *about* state-court judgments, told by private actors, *six years after* the judgment was entered.

These bullet points are fully explained in Plaintiff's opening brief before this Court.

Defendants' understanding of *Rooker-Feldman* is muddled, and their arguments in support of its application here make little sense. For example, Defendant Palisades quotes the district court's conclusion that Plaintiff's claims are "directly and undeniably tied to the validity of the state court judgment itself," then continues, "Plaintiff's arguments to the contrary are belied by his efforts to challenge the state court judgment, more than <u>eight years</u> *after* judgment entry, <u>eight months</u> *after* the filing of this case, and *after* the receipt of Defendants' motion to dismiss."[27] The "challenge [to] the state court judgment" to which Palisades is referring here is McCrobie's application to the Buffalo City

---

[27] Brief of Appellee Palisades, ECF#42, at 26 (emphases in original).

Court for an Order to Show Cause – an application that the Buffalo City Court granted.[28]

Palisades' argument is upside-down: Plaintiff's state-court application to vacate the state-court judgment does not *belie* Plaintiff's *Rooker-Feldman* argument; to the contrary, it *bolsters* that argument. If McCrobie's federal FDCPA action is nothing more than an attempt to vacate the state-court judgment, then why did McCrobie *also* file a state-court Order to Show Cause to vacate the state-court judgment? Why use two stones to kill a single bird? Why would McCrobie continue to press this federal FDCPA case, *even after* obtaining a favorable decision from the Buffalo City Court that vacated the judgment? Why does McCrobie's victory at the state-court level, persuading the Buffalo City Court to reverse its own judgment, not moot this federal FDCPA action, if the only thing McCrobie is seeking here is to reverse the same state-court judgment?

The answer is simple: Here, *McCrobie is not seeking to vacate the state-court judgment.* That judgment was obtained in 2008, by

---

[28] *See* Memorandum and Order of the Honorable Barbara Johnson-Lee, A. 686.

13

Centurion Capital Corporation. But here, McCrobie does not allege that Centurion Capital Corporation or anyone else committed any FDCPA violations in 2008 in the lead-up to the state-court judgment. The only FDCPA violations alleged by McCrobie in his FAC and proposed SAC are Defendants' lies about their legal authority to enforce the judgment in 2014. Yes, McCrobie has a second set of grievances involving whether he was properly served in 2008 and whether the state-court judgment should have been entered. But he took that second set of grievances to the Buffalo City Court, not to the federal district court below.

The Houslanger Defendants' brief, too, has its share of odd arguments. For instance, it states, "It is undeniable that vacating the default judgment would end the issue concerning assignment of the debt to Palisades,"[29] and, "Here, there is a definite causal relationship between the Buffalo City Court default judgment and the alleged income execution injury which McCrobie complained of in the district court."[30] Again, this is simply odd reasoning: The fact that non-party Centurion obtained a state-court judgment against McCrobie in 2008 in

---

[29] Brief of Appellee Houslanger, ECF#42, at 12.
[30] *Id.* at 16.

no way *caused* Defendants to lie about the state-court judgment in 2014. The state-court judgment was not a *sufficient* cause of Defendants' misrepresentations, nor was it even a *necessary* cause, since it is possible for a debt collector to lie about its legal authority to enforce a judgment even where no judgment was entered.

All that can be said is that the state-court judgment *preceded* Defendants' misrepresentations chronologically. But this makes no difference: The FDCPA prohibits lies made in connection with the collection of any consumer debt, including consumer debts that have "been reduced to judgment."[31] Thus, Defendants' entire argument – that the *Rooker-Feldman* doctrine is implicated merely because a state-court judgment *preceded* the alleged FDCPA violation – is fundamentally flawed.

The cases cited by Defendants' in their Appellee Briefs are of no use in deciding this case because they deal with different situations. In *Coble v. Cohen & Slamowitz, LLP*, the Southern District of New York invoked *Rooker-Feldman*, where the consumer's proposed amended

---

[31]  15 U.S.C. § 1692a(5).

complaint would have sought the return of garnished funds.[32] But in *Coble*, the plaintiff's theory as to *why* the garnished funds ought to be returned was that process servers had intentionally filed false affidavits of service and, thus, the state-court judgments themselves were invalid.[33] That is *not* the case here, where Plaintiff argues that any garnished funds ought to be returned because Defendants lied about their legal authority to enforce the judgments – regardless of whether the judgments themselves were valid.

Similarly, in *Smith v. 131 E. Ames Inc.*, the gravamen of the *pro se* plaintiff's complaint was that a debt collector violated the FDCPA for attempting to collect a debt that was not "justly owed."[34] The Eastern District of New York held that such allegations ran afoul of *Rooker-Feldman*, since questions of whether the debt was "justly owed" had been fully adjudicated by the state court and merged into the state-court's judgment. Here, though, McCrobie is not asking the federal district court to wade into the question of whether a debt was "justly

---

[32] *Coble v. Cohen & Slamowitz, LLP*, No. 11 Civ. 1037(ER)(GAY), 2013 WL 1500418, at *1 (S.D.N.Y. Apr. 10, 2013

[33] *See Id.*

[34] *See Smith v. 131 E. Ames Inc.*, No. 14-CV-5060 (SJF)(SIL), 2015 WL 1565491, at *7 (E.D.N.Y. Apr. 8, 2015)

owed" to Centurion or any other question already decided by a state court; rather, McCrobie is alleging that Defendants lied about a state-court judgment years after the state court entered that judgment. No review of the state-court judgment is either requested or implied – and thus, *Rooker-Feldman* is inapplicable.

*Swiatkowski v. Citibank* is also off-point. *Swiatkowski* was an unpublished summary decision in a *pro se* case and, thus, this Court's opinion did not fully recount the facts of this case.[35] But Defendant Palisades quotes the portion of *Swiatkowski* that states, "The validity of the proof of claim at issue . . . depended entirely on the validity of the underlying state court foreclosure judgment such that a decision in Swiatkoski's favor would effectively amount to declaring the state court judgment fraudulently procured and thus void."[36] But here, the validity of the Income Execution does *not* depend entirely on the validity of the Buffalo City Court judgment – in fact, the validity of the Income Execution has nothing to do with whether the Buffalo City Court judgment was correctly entered. To the contrary, McCrobie's theory that

---

[35] *Swiatkowski v. Citibank*, 446 Fed. Appx. 360 (2d Cir. 2011) (not for publication).

[36] *Id.* at 361 (internal quotations and citations omitted).

17

the Income Execution violated the FDCPA is based *exclusively* on the allegation that, in 2014, Defendants lied when they claimed to be the rightful owners of the state-court judgment – an issue that no state-court judgment or decision has ever addressed.

Finally, *Morris v. American Home Mortg. Servicing, Inc.*, an unpublished per curiam opinion cited by Defendant Houslanger, is yet another *pro se* case in which the relevant facts are not fully set out.[37] But it is clear from the Fifth Circuit's opinion that the case is off point. According to the Fifth Circuit, the *Morris pro se* plaintiff claimed only "that the foreclosure judgment or writ of possession was unlawful," and sought no relief other than "the setting aside of the state foreclosure judgment and staying of the execution of the writ of possession."[38] Again, that is not the case here: McCrobie has *not* complained to the federal district court that the state-court judgment was unlawful; instead, he has taken up that complaint directly with the Buffalo City Court. And McCrobie's federal FAC and proposed SAC does not ask that

---

[37] *Morris v. American Home Mortg. Servicing, Inc.*, 443 Fed. Appx. 22 (5th Cir. 2011) (not for publication).
[38] *Id.* at 24.

18

the state-court judgment be set aside; rather, it seeks actual damages caused by Defendants' misrepresentations.

It is not necessary to address the Seventh Circuit case of *Harold v. Steel*,[39] which has already been discussed at length in Plaintiff's opening brief.[40] For the reasons stated in that brief, as well as the reasons stated here, Plaintiff respectfully asks this Court to hold that the *Rooker-Feldman* doctrine has no applicability here, and to reverse the district court's decision dismissing Plaintiff's claims.

## III.  Defendants' briefs do not accept Plaintiff's well-pleaded allegations as true.

While Plaintiff alleges that Defendants violated several sections of the FDCPA, the crux of Plaintiff's allegations is that Defendants lied when they claimed to have legal authority to enforce the Buffalo City Court judgment when in fact they had no legal authority to do so. As fully explained in Plaintiff's opening brief, one of the reasons that Defendants lacked this legal authority was that they failed to "file in the office of the clerk of the court in which the judgment was entered . . . a copy of the instrument on which [their] authority is based,

---

[39] *Harold v. Steel*, 773 F.3d 884 (7th Cir. 2014).
[40] *See* Brief of Appellant McCrobie, ECF#31, at 33-35.

19

acknowledged in the form required to entitle a deed to be recorded," as required by C.P.L.R. 5019(c).

Interestingly, Defendants' briefs spend little time arguing over whether compliance with C.P.L.R. 5019(c) was a prerequisite to delivering the Income Execution. Instead, Defendants attempt to neutralize Plaintiff's allegations by attempting to prove that they did, in fact, comply with C.P.L.R. 5019(c), stating, "Irrespective of Plaintiff [sic] interpretation of 5019(c), on or about <u>December 12, 2012</u>, Houslanger & Associates filed a substitution of counsel in Buffalo City Court, expressly providing notice of their appearance on behalf of Palisades as successor to Centurion Capital Corporation,"[41] and, "Palisades has already demonstrated that all necessary documents were on file with the state court . . . ."[42] In support, Palisades cites to a document that appears at page A. 473 of the Appendix.

But for purposes of Defendants' Motion to Dismiss and Plaintiff's Motion to Amend, Defendants' version of events cannot be accepted as true. "At this stage, [the Court] assume[s] that all well-pleaded factual

---

[41] Brief of Appellee Palisades, ECF#42, at 40 (emphases in original).
[42] *Id.* at 42.

allegations are true and draw all reasonable inferences in the plaintiff's favor."[43] And Defendants' version of events is directly contrary to the proposed SAC, which alleges, "No copy of the instrument on which Palisades' authority is based was ever filed at the Buffalo City Court, as evidenced by the fact that such copy is completely absent from [sic] Clerk's publicly available file on the case."[44] This allegation must be accepted as true.

Even if it were proper to choose between Defendants' and Plaintiff's competing versions of events at this stage of the case, Defendants' argument would still be unavailing. A consent to change attorney does not meet C.P.L.R. 5019(c)'s requirements because it is not "a copy of the instrument on which [Palisades'] authority is based." For these reasons, Plaintiff respectfully asks this Court to reject Defendants' version of the facts, and hold that Plaintiff's FAC and proposed SAC state viable claims under the FDCPA.

---

[43] *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).
[44] A. 192.

## IV.   Defendants' other arguments are without merit.

It bears pointing out that neither of Defendants' Briefs make much of an effort to discuss whether Plaintiff's FAC or proposed SAC state viable claims under the FDCPA. Defendants' discussions of the FDCPA's substantive rules are conclusory – even perfunctory. (For instance, the Houslanger Brief's discussion of the § 1692e(3) claim does not even mention this Court's decision in *Greco v. Trauner, Cohen & Thomas, L.L.P.*,[45] which is the seminal case on the issue.) Thus, there is no need to revisit those issues here; as to those points, Plaintiff relies on his detailed explanation of why Defendants' behavior violated the FDCPA that appears in his opening brief.

Interestingly, while Defendants at least addressed the C.P.L.R. 5019(c) issue in their briefs (albeit improperly, as discussed above), they did *not* address Plaintiff's argument in Part II.B of Plaintiff's opening brief – that is, the argument that Defendants had no right to collect upon the state court judgment before Plaintiff received notice of assignment. For this reason, Defendants have waived the right to argue

---

[45] *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005).

22

this issue before this Court. Similarly, neither Defendant argued the vicarious liability or joinder issues raised in their briefing below. For this reason, Defendants have waived the right to argue these issues before this Court.

Finally, there is no need here to revisit the statute of limitations issue here. The alleged acts that violated the FDCPA did not happen until August 2014, when Defendants delivered the Income Execution. Defendants' relentless insistence that the limitations clock began ticking in 2006, eight years before Defendants sent the communication that forms the basis of Plaintiff's complaint, literally makes no sense. Defendants might have gained some credibility by abandoning this absurd argument on appeal; instead, Palisades' brief presses it as strongly as ever. In any case, Plaintiff relies on his opening brief as to this issue. Plaintiff also relies on his opening brief as to the *Colorado River* abstention issue.

The Houslanger Brief makes a halfhearted attempt to argue that this Court ought to affirm the district court's decision on the alternative

ground that Plaintiff unduly delayed moving for leave to file his SAC.[46]

But the brief makes no effort to explain how anyone has been

prejudiced by Plaintiff's so-called "delay." In any event, the cases cited

in the Houslanger Brief do not serve the argument well; in each of

them, a party sought to amend a pleading either very late in

discovery,[47] or at the summary judgment stage.[48] Here, where

Defendants have yet to answer and discovery has not even commenced,

it is impossible to argue that Plaintiff has "delayed" his request to

amend his complaint.

## Conclusion

As to all other points raised in Defendants' Briefs, Plaintiff relies

on his opening brief. For the reasons stated there, as well as the reasons

---

[46] Brief of Appellee Houslanger, ECF#43, at 28-29.

[47] *See Luellen v. Hodge*, 2013 WL 5490166, at *5 (W.D.N.Y. Sept. 30, 2013) (denying motion to amend pleading with one month remaining before the close of discovery).

[48] *See Commer v. McEntee*, No. 00 Civ. 7913(RWS), 2006 WL 3262494, at *18 (S.D.N.Y. Nov. 9, 2006) (denying attempt to amend pleading in a brief filed in support of an opposition to a motion for summary judgment); *Berman v. Parco*, 986 F. Supp. 195, 218 (S.D.N.Y. 1997) (denying plaintiff's request to add a claim resting on an entirely new legal theory "shortly before defendants were scheduled to file their summary judgment motion," when the case was "otherwise . . . trial ready").

stated in this Reply, Plaintiff respectfully asks this Court to reverse the

judgment of the district court, and to remand for further proceedings.

Dated:      New York, New York
            August 8, 2016

                                    Respectfully submitted,

                                    Bromberg Law Office, P.C.


                              By:   /s/ Jonathan R. Miller
                                    Jonathan R. Miller


**Attorneys for Plaintiff-Appellant**

Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
(212) 248-7906

Kenneth R. Hiller
Seth J. Andrews
Timothy Hiller
Law Offices of Kenneth Hiller PLLC
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288

## Certificate of Compliance
### With Type-Volume Limitation, Typeface Requirements
### And Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because:

2.

This brief contains 4,161 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

3.      This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5), and the type style requirements of Fed.R.App.P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010, in Century, font size 14.

Dated:   New York, New York
         August 8, 2016

Respectfully submitted,

Bromberg Law Office, P.C.
Attorneys for Plaintiff-Appellant

By: /s/ Jonathan R. Miller
    Jonathan R. Miller

26